errors would have a material impact on any prior periods. Nor is the Company able to determine what, if any, impact the results of the review will have on managements' assessment of the effectiveness of the Company's internal controls over financial reporting or disclosure controls and procedures. (Emphasis added.)

151.  On April 10, 2007, Superior filed with the SEC its annual report on Form 10-K, in which the Company announced the results of its internal investigation into historical stock option grant practices.  Therein, Superior *admitted* that its past option grants had been improperly dated and that, as a result, it had restated its past financial statements. Specifically, the Company announced that its internal investigation of historical stock option grants, commenced in response to the derivative complaints filed by Gary B. Eldred and Darrel D. Mack, revealed that "for most option grants, there were deficiencies in the process of granting, documenting or accounting for stock options, including in several instances retrospectively obtaining lower exercise prices and granting options to new employees at prices set before their actual hire dates."  In addition, Superior announced that its CFO, Defendant Ornstein, *knew* about the backdating, stating he "was aware of the use of hindsight to select option grant dates with lower exercise prices and had personally obtained some financial benefit from exercising these misdated options..."  The Company detailed the results of its internal investigation as follows:

Review of Stock Option Practices and Restatements of Consolidated Financial Statements

During the fourth quarter of 2006, two shareholder derivative lawsuits were filed against us and certain present and former officers and directors of the company alleging that the defendants (1) improperly backdated stock options of officers and directors, in violation of the company's shareholder-approved stock option plans; (2) improperly recorded and accounted for the backdated stock options, in violation of generally accepted accounting principles; (3) improperly reported tax deductions based on the backdated stock options, in violation of Section 162(m) of the Internal Revenue Code; and (4) produced and disseminated to shareholders and the market false financial statements and other SEC filings. To evaluate these allegations, under the oversight of the Audit Committee of the Board of Directors, outside counsel and forensic accounting experts (the "Review Team"), thereafter conducted a comprehensive review of our historical stock option grant practices.

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 2 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 103   Filed 05/06/08   Page 82 of 166
#:331

The Review Team analyzed approximately 1,125 option grants, involving approximately 3,875,500 options, or 98% of the total options granted, made on 52 separate grant dates between 1997 and 2006. The Review Team also reviewed certain option grants for the time period between 1991 and 1996. Based on this review, we concluded that, for most option grants, there were deficiencies in the process of granting, documenting or accounting for stock options that resulted in our using incorrect measurement dates for financial accounting purposes. These deficiencies included:

• For certain option grants, we generally failed to comply with the terms of the applicable stock option plans concerning the timing of option grants. In particular, our 1988 and 1993 Stock Option plans required that any option grants approved by Unanimous Written Consent ("UWC") be considered granted on the date the last Compensation and Benefits Committee member executed the consent. Instead, we considered options granted, and used a measurement date for accounting purposes, prior to the date on which the last Committee member executed the UWC;

• For certain option grants, there was incomplete or missing documentation of the requisite corporate actions. For example, in most cases involving grants made by UWC, the Review Team was not able to locate all of the executed versions of the UWCs and, therefore, could not determine the date the UWC became effective. As a result, we concluded the date of the next Board of Directors meeting, when a duplicate UWC was executed, was the appropriate accounting measurement date;

• For certain option grants, we granted options before the completion of required corporate actions. In one instance, a grant to our then CEO and current Chairman of the Board requiring shareholder approval was made before that approval was obtained. In addition, as discussed above, certain grants were made before the approving UWC was finally executed;

• For certain option grants, we did not finalize the allocation of the number of options granted to each employee until after the purported grant date;

• For certain option grants, we selected a grant date retrospectively to obtain a lower exercise price; and

• For certain option grants, we awarded new employees options prior to their actual start date to obtain a lower exercise price.

## False Financial Statements and Concealment of Misconduct

152.    As a result of the Defendants' backdating of stock options, the Defendants caused the Company to issue materially false and misleading financial statements and

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 3 of 85   Page ID
Case 2:06-cv-07213-AHS   MO   Document 103   Filed 05/06   08   Page 83 of 165
#:332

1  reports, including but not limited to annual reports, filed with the SEC and disseminated to

2  shareholders and the public as Forms 10-K, proxy statements, filed with the SEC and

3  disseminated to shareholders and the public as Forms DEF-14A, and other quarterly and

4  interim reports.

5      153.   On May 26, 2006, Forbes, in an article titled, "The Next Big Scandal," quoted

6  Former SEC Chairman Harvey L. Pitt, as saying "[w]hat's so terrible about backdating

7  options grants?  For one thing, it likely renders a company's proxy materials false and

8  misleading.  Proxies typically indicate that options are granted at fair market value.  But if

9  the grant is backdated, the options value isn't fair – at least not from the vantage point of

10 the company and its shareholders."

11     154.   Further, on July 22, 2006, The San Francisco Chronicle recounted SEC

12 Chairman Christopher Cox's announcement in San Francisco on July 20, 2006 where he

13 said, "[backdating in many cases] makes a hash of (companies') financial statements . . .

14 [and is] poisonous [to efficient markets]. . . . It is securities fraud if you falsify books and

15 records.  It is securities fraud if you present financial statements to the SEC that do not

16 comply with generally accepted accounting principles.  There is no requirement that (the

17 defendant) personally profit [to prove that a crime occurred.]"

18     155.   As detailed herein, the Defendants prepared, approved and/or signed

19 Superior's annual and quarterly SEC reports during and following the Relevant Period.

20 The Defendants knowingly and deliberately caused the Company to disseminate materially

21 false and misleading statements in the periodic filings that the Defendants prepared,

22 approved, and/or signed.  Each of the Defendants knew or should have known that these

23 statements were false and either knowingly participated in their dissemination or failed to

24 prevent or correct them.

25     156.   The Defendants' conduct in backdating stock options and benefiting from

26 unaccounted-for "in-the-money" stock options caused each of Superior's Forms 10-K,

27 including Form 10-K405, for the Relevant Period, to materially understate Superior's

28 compensation expense and materially overstate the Company's net income or materially

understate its net loss, because the Defendants failed to expense the "in-the-money" portion of Superior's stock option grants during the period as required by APB 25.

157.   As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Defendants,

    a.   violated the terms of the 1993 Plan by granting stock options with exercise prices less than the fair market value of the stock on the actual date of grant;

    b.   violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

    c.   violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the 1993 Plan; and

    d.   produced and disseminated to Superior shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants, and thereby understated compensation expenses and overstated net income.

158.   The Company, with the knowledge, approval, and participation of each of the Defendants listed below, disseminated its false financial statements in, *inter alia*, the following Form 10-K and Form 10-K405 filings:

    a.   Defendants L. Borick, Ornstein, Brown, Ausman, S. Borick, Colburn and Parkinson, all of whom signed the Form 10-K for the fiscal year ended December 31, 1993, filed with the SEC on March 31, 1994, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

    b.   Defendants L. Borick, Ornstein, Brown, Ausman, S. Borick, Colburn,

Evans and Parkinson, all of whom signed the Form 10-K for the fiscal year ended December 31, 1994, filed with the SEC on March 31, 1995, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

c.    Defendants L. Borick, Ornstein, Brown, Ausman, S. Borick, Colburn, Evans and Parkinson, all of whom signed the Form 10-K for the fiscal year ended December 31, 1995, filed with the SEC on March 29, 1996, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

d.    Defendants L. Borick, Ornstein, Brown, Ausman, S. Borick, Colburn, Evans and Parkinson, all of whom signed the Form 10-K405 for the fiscal year ended December 31, 1996, filed with the SEC on March 28, 1997, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

e.    Defendants L. Borick, Ornstein, Brown, Ausman, S. Borick, Colburn, Evans and Parkinson, all of whom signed the Form 10-K405 for the fiscal year ended December 31, 1997, filed with the SEC on March 31, 1998, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

f.    Defendants L. Borick, Ornstein, Ausman, S. Borick, Brown, Colburn,

Evans and Parkinson, all of whom signed the Form 10-K405 for the fiscal year ended December 31, 1998, filed with the SEC on March 31, 1999, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

g.  Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson, all of whom signed the Form 10-K405 for the fiscal year ended December 31, 1999, filed with the SEC on March 29, 2000, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

h.  Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson, all of whom signed the Form 10-K405 for the fiscal year ended December 31, 2000, filed with the SEC on March 29, 2001, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

i.  Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson, all of whom signed the Form 10-K405 for the fiscal year ended December 31, 2001, filed with the SEC on March 26, 2002, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

j.  Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn,

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

Evans and Parkinson, all of whom signed the Form 10-K for the fiscal year ended December 31, 2002, filed with the SEC on March 28, 2003, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

k.   Defendants L. Borick, S. Borick, Ornstein, Fanelli, Ausman, Brown, Colburn, Evans and Parkinson, all of whom signed the Form 10-K for the fiscal year ended December 31, 2003, filed with the SEC on March 12, 2004, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m);

l.   Defendants L. Borick, S. Borick, Ornstein, Fanelli, Ausman, Brown, Colburn, Evans and Parkinson, all of whom signed the Form 10-K for the fiscal year ended December 26, 2004, filed with the SEC on March 15, 2005, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m); and

m.   Defendants L. Borick, S. Borick, Ornstein, Fanelli, Ausman, Brown, Colburn, Evans and Parkinson, all of whom signed the Form 10-K for the fiscal year ended December 25, 2005, filed with the SEC on March 28, 2006, knowingly approved the false statements in the 10-K and knew that the statements contained therein were false because they backdated the option grants and knew that they were violating APB 25 and Section 162(m).

159.   Specifically, in the Company's annual reports on Form 10-K and Form 10-

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 8 of 85   Page ID
Case 2:06-cv-07213-AHS   MO   Document 103   Filed 05/05   08   Page 88 of 165
#:337

K405 for at least fiscal years 1996 to 2002, the Defendants caused Superior to falsely state that the Company "elected to follow Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees" ("APB 25"), and related interpretations in accounting for our employee stock options. Under APB 25, because the exercise price of employee stock options equals or exceeds the market price of the underlying stock on the date of grant, no compensation expense is recorded." Such statements were materially false and misleading in each of these years because Superior had granted stock options at prices that were below fair market value on the date of the grant and failed to account for the "in-the-money" options as required by APB 25.

160.   As alleged previously, APB 25 required the Defendants to record compensation expense for options that were "in-the-money" on the date of grant. However, they did not do so, thereby materially understating Superior's compensation expense and materially overstating Superior's net income or materially understating its net loss. These statements were designed to conceal, and did in fact conceal, the fact that the Defendants were engaged in the continuous and systematic backdating of stock option grants to Superior insiders in violation of state and federal laws.

161.   Additionally, Superior's materially false and misleading financial statements for fiscal years 1993 to 2002 were included in its Forms 10-K filed for subsequent fiscal years. For this reason, and to the extent they included financials from earlier periods, Superior's annual reports on Form 10-K for fiscal years 2003 through 2005 were also materially false and misleading. By participating in the secret backdating of stock options, and by reviewing and/or signing these subsequent annual reports, the Defendants knew, or were reckless in not knowing, that the financial statements in these later filings were materially false and misleading.

162.   The Defendants' stock option backdating caused each of Superior's Forms 10-K and 10-K405 for the Relevant Period to materially understate Superior's compensation expense and materially overstate the Company's net income or materially understate its net loss, because Defendants failed to expense the "in-the-money" portion of

Case 2:06-cv-07213-AHS-FMO  Document 105-2  Filed 05/06/08  Page 9 of 85  Page ID
Case 2:06-cv-07213-AHS  MO  Document 103  Filed 05/05/ ,08  Page 89 of 165
#:338

Superior's stock option grants during the period as required by APB 25.

163.    Furthermore, Defendants L. Borick, S. Borick and Ornstein also filed false Certifications Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 (the "Certifications"), certifying that each Annual Report of Superior on Forms 10-K "fully complies with the requirements of Section 13(a) or Section 15(d), as applicable, of the Securities Exchange Act of 1934, as amended; and [t]he information contained in such report fairly presents, in all material respects, the financial condition and results of operation of the company." Defendants L. Borick and Ornstein signed the following false Certifications:

> a.    for the Form 10-K for the year ended December 31, 2003, filed with the SEC on March 11, 2004;

Defendants S. Borick and Ornstein signed the following false Certifications:

> a.    for the Form 10-K for the year ended December 26, 2004, filed with the SEC on March 15, 2005;
> b.    for the Form 10-K for the year ended December 25, 2005, filed with the SEC on March 28, 2006.

164.    The Director Defendants caused Superior to disseminate to shareholders proxy statements in connection with the Company's annual shareholder meetings and periodically for special shareholder meetings during the Relevant Period. The Director Defendants prepared and reviewed each proxy statement between 1994 and 2003. Moreover, they knew, or were deliberately reckless in not knowing, that the proxies were materially false and misleading.

165.    The Superior proxy statements that were disseminated to shareholders by the Director Defendants annually in connection with annual shareholders' meeting typically concerned the election of directors, the approval and adoption of Superior's stock option plan and authorization to reserve shares for future issuance under the stock option plans, and ratification of the selection of Superior's auditor. Each proxy statement disseminated

to shareholders during this period contained materially false and misleading disclosures or omitted information about Superior's stock option practices, as detailed above.

166.   On April 1, 1994, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 1993 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 20, 1994.   The 1993 Proxy Statement falsely reported January 4, 1993 as the date of stock option grants to Defendants Brown, Kazmi, Ornstein and Ferguson, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant."  These statements were materially false and misleading in light of the backdating alleged herein.

167.   The 1993 Proxy Statement failed to report the true value of the compensation paid to Defendants Brown, Kazmi, Ornstein and Ferguson or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants Brown, Kazmi, Ornstein and Ferguson on the date of the grant.

168.   Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Ornstein and Parkinson knowingly approved the false statements in the 1993 Proxy Statement and knew that the 1993 Proxy Statement was false and misleading because the option grants were backdated.

169.   On March 30, 1995, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 1994 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 19, 1995.   The 1994 Proxy Statement falsely reported May 31, 1994 as the date of stock option grants to Defendants Brown, Ornstein, Ferguson, Maldini and Kazmi, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York

Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

170. The 1994 Proxy Statement failed to report the true value of the compensation paid to Defendants Brown, Ornstein, Ferguson, Maldini and Kazmi or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants Brown, Ornstein, Ferguson, Maldini and Kazmi on the date of the grant.

171. Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 1994 Proxy Statement and knew that the 1994 Proxy Statement was false and misleading because the option grants were backdated.

172. On March 28, 1996, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 1995 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 17, 1996. The 1995 Proxy Statement falsely reported February 1, 1995 as the date of stock option grants to Defendants Brown, Ornstein, Ferguson and Maldini, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

173. The 1995 Proxy Statement failed to report the true value of the compensation paid to Defendants Brown, Ornstein, Ferguson and Maldini or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants Brown, Ornstein, Ferguson and Maldini on the

date of the grant.

174.   Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 1995 Proxy Statement and knew that the 1995 Proxy Statement was false and misleading because the option grants were backdated.

175.   On March 19, 1998, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 1997 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 15, 1998.  The 1997 Proxy Statement falsely reported April 14, 1997 as the date of stock option grants to Defendants Ornstein, Ferguson and Maldini, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

176.   The 1997 Proxy Statement failed to report the true value of the compensation paid to Defendants Ornstein, Ferguson and Maldini or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants Ornstein, Ferguson and Maldini on the date of the grant.

177.   Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 1997 Proxy Statement and knew that the 1997 Proxy Statement was false and misleading because the option grants were backdated.

178.   On March 30, 1999, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 1998 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 7, 1999.  The 1998 Proxy Statement falsely reported September 3, 1998 as the date of stock option grants to

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 13 of 85   Page ID
Case 2:06-cv-07213-AHS-, MO   Document 103   Filed 05/05/ 8   Page 93 of 165
#:342

Defendants Ornstein, Ferguson and O'Rourke, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

179.   The 1998 Proxy Statement failed to report the true value of the compensation paid to Defendants Ornstein, Ferguson and O'Rourke or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants Ornstein, Ferguson and O'Rourke on the date of the grant.

180.   Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 1998 Proxy Statement and knew that the 1998 Proxy Statement was false and misleading because the option grants were backdated.

181.   On March 29, 2000, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 1999 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 12, 2000.   The 1999 Proxy Statement falsely reported September 24, 1999 as the date of stock option grants to Defendants Ornstein, Ferguson, S. Borick and O'Rourke, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

182.   The 1999 Proxy Statement failed to report the true value of the compensation paid to Defendants Ornstein, Ferguson, S. Borick and O'Rourke or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided

undisclosed compensation to Defendants Ornstein, Ferguson, S. Borick and O'Rourke on the date of the grant.

183.   Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 1999 Proxy Statement and knew that the 1999 Proxy Statement was false and misleading because the option grants were backdated.

184.   On April 5, 2001, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 2000 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 11, 2001.   The 2000 Proxy Statement falsely reported September 20, 2000 as the date of stock option grants to Defendants Ornstein, S. Borick, Ferguson and O'Rourke, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

185.   The 2000 Proxy Statement failed to report the true value of the compensation paid to Defendants Ornstein, S. Borick, Ferguson and O'Rourke or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants Ornstein, S. Borick, Ferguson and O'Rourke on the date of the grant.

186.   Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 2000 Proxy Statement and knew that the 2000 Proxy Statement was false and misleading because the option grants were backdated.

187.   On March 28, 2002, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the

2001 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 10, 2002. The 2001 Proxy Statement falsely reported September 20, 2001 as the date of stock option grants to Defendants L. Borick, S. Borick, Ornstein, Ferguson and O'Rourke, and stated that the incentive options issued to these Defendants were "granted at market value (closing price on the New York Stock Exchange – Composite Transactions of the Company's common stock) on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

188. The 2001 Proxy Statement failed to report the true value of the compensation paid to Defendants L. Borick, S. Borick, Ornstein, Ferguson and O'Rourke or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants L. Borick, S. Borick, Ornstein, Ferguson and O'Rourke on the date of the grant.

189. Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 2001 Proxy Statement and knew that the 2001 Proxy Statement was false and misleading because the option grants were backdated.

190. On April 4, 2003, the Company, with the effect of concealing the improper option backdating, filed with the SEC and disseminated to Superior's shareholders the 2002 Proxy Statement, which provided, among other things, notice of and information for Superior's annual shareholder's meeting to be held May 9, 2003. The 2002 Proxy Statement falsely reported October 9, 2002 as the date of stock option grants to Defendants S. Borick, Ornstein, Ferguson and O'Rourke, and stated that the incentive options issued to these Defendants were "granted at market value at the closing price on the New York Stock Exchange of the Company's common stock on the date of grant." These statements were materially false and misleading in light of the backdating alleged herein.

191. The 2002 Proxy Statement failed to report the true value of the compensation

paid to Defendants S. Borick, Ornstein, Ferguson and O'Rourke or that the options were backdated as alleged herein, rather than issued on the date at which the stock traded at the market value identified in the proxy statement. Thus, the backdated stock options provided undisclosed compensation to Defendants S. Borick, Ornstein, Ferguson and O'Rourke on the date of the grant.

192.    Defendants Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson knowingly approved the false statements in the 2002 Proxy Statement and knew that the 2002 Proxy Statement was false and misleading because the option grants were backdated.

193.    From 1999 to 2006, Superior, with the knowledge, approval, and participation of each of the Defendants, for the purpose and with the effect of concealing the improper option backdating, filed with the SEC Form 4s and Form 5s that falsely reported the dates of stock option grants to the Defendants, as summarized in the list attached hereto and incorporated herein as Exhibit "A."

### Individual Defendants' Insider Selling

194.    During and following the Relevant Period, certain of the Defendants (collectively, the "Insider Selling Defendants"), while in possession of materially adverse non-public information regarding the backdating of stock options and the false financial statements resulting therefrom, sold more than $49 million in Superior stock as demonstrated below:

| NAME | DATE OF TRANSACTION | SHARES DISPOSED | PRICE per SHARE | GROSS PROCEEDS |
|------|------|------|------|------|
| Ausman | 09/23/04 | 6,000 | $29.13 | $174,780.00 |
| | 09/23/04 | 2,000 | $29.13 | $58,260.00 |
| | 09/23/04 | 2,000 | $29.13 | $58,260.00 |
| | | Total Proceeds= | | $291,300.00 |
| L. Borick | 05/15/02 | 71,800 | $51.90 | $3,726,420.00 |
| | 05/14/02 | 293,000 | $52.02 | $15,241,860.00 |
| | 05/13/02 | 50,000 | $52.32 | $2,616,000.00 |
| | 05/08/02 | 30,900 | $51.56 | $1,593,204.00 |

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 17 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 10S   Filed 05/05/2008   Page 97 of 165
#:846

| | 05/07/02 | 37,600 | $51.81 | $1,948,056.00 |
|---|---|---|---|---|
| | 05/06/02 | 71,400 | $52.28 | $3,732,792.00 |
| | 05/03/02 | 40,000 | $52.38 | $2,095,200.00 |
| | 12/14/04 | 72,000 | $27.72 | $1,995,840.00 |
| | 12/10/04 | 11,000 | $27.43 | $301,730.00 |
| | 12/11/03 | 7,450 | $45.55 | $339,347.50 |
| | 12/03/03 | 75,000 | $44.82 | $3,361,500.00 |
| | | | **Total Proceeds =** | **$36,951,949.50** |
| S. Borick | 02/22/02 | 1,000 | $42.17 | $42,170.00 |
| | 02/22/02 | 700 | $42.17 | $29,519.00 |
| | 02/22/02 | 5,000 | $42.21 | $211,050.00 |
| | 02/22/02 | 600 | $42.15 | $25,290.00 |
| | 02/22/02 | 1,000 | $42.15 | $42,150.00 |
| | 02/22/02 | 400 | $42.17 | $16,868.00 |
| | 02/22/02 | 1,000 | $42.15 | $42,150.00 |
| | 02/22/02 | 300 | $42.18 | $12,654.00 |
| | 11/25/03 | 25,000 | $45.05 | $1,126,250.00 |
| | | | **Total Proceeds =** | **$1,548,101.00** |
| Bouskill | 09/05/02 | 750 | $47.09 | $35,317.50 |
| | 05/21/02 | 750 | $50.85 | $38,137.50 |
| | 01/07/02 | 57 | $40.71 | $2,320.47 |
| | 01/07/02 | 443 | $40.71 | $18,034.53 |
| | 01/07/02 | 1,250 | $40.71 | $50,887.50 |
| | 01/07/02 | 750 | $40.71 | $30,532.50 |
| | 05/04/01 | 750 | $39.89 | $29,917.50 |
| | 05/04/01 | 750 | $39.89 | $29,917.50 |
| | 03/12/01 | 1,250 | $37.27 | $46,587.50 |
| | 03/12/01 | 1,500 | $37.27 | $55,905.00 |
| | 03/12/01 | 1,500 | $37.27 | $55,905.00 |
| | 03/12/01 | 2,250 | $37.27 | $83,857.50 |
| | 10/31/03 | 2,500 | $42.77 | $106,925.00 |
| | 10/31/03 | 750 | $42.77 | $32,077.50 |
| | 10/31/03 | 1,000 | $42.77 | $42,770.00 |
| | 10/31/03 | 1,572 | $42.77 | $67,234.44 |
| | 10/31/03 | 928 | $42.77 | $39,690.56 |

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | Total Proceeds = | $766,017.50 |
|---|---|---|---|---|
| Brown | 12/12/00 | 4,500 | $30.88 | $138,960.00 |
| | 12/12/00 | 500 | $31.06 | $15,530.00 |
| | 08/04/99 | 5,000 | $26.38 | $131,900.00 |
| | 01/29/98 | 500 | $26.13 | $13,062.50 |
| | 01/29/98 | 500 | $26.19 | $13,093.75 |
| | 01/29/98 | 518 | $26.06 | $13,500.38 |
| | 01/29/98 | 1,000 | $26.25 | $26,250.00 |
| | 01/29/98 | 1,000 | $26.00 | $26,000.00 |
| | 01/28/98 | 2,000 | $26.13 | $52,250.00 |
| | 01/28/98 | 1,000 | $26.06 | $26,062.50 |
| | 01/27/98 | 1,500 | $26.06 | $39,093.75 |
| | 01/27/98 | 1,000 | $26.00 | $26,000.00 |
| | 01/27/98 | 500 | $26.13 | $13,062.50 |
| | 01/26/98 | 8,500 | $26.00 | $221,000.00 |
| | 01/26/98 | 1,000 | $26.13 | $26,125.00 |
| | 01/26/98 | 1,000 | $26.06 | $26,062.50 |
| | 01/23/98 | 5,500 | $26.06 | $143,343.75 |
| | 01/23/98 | 1,500 | $26.13 | $39,187.50 |
| | 01/23/98 | 4,000 | $26.00 | $104,000.00 |
| | 01/22/98 | 4,000 | $26.00 | $104,000.00 |
| | 01/22/98 | 1,000 | $26.06 | $26,062.50 |
| | 01/22/98 | 500 | $26.19 | $13,093.75 |
| | 01/22/98 | 500 | $26.31 | $13,156.25 |
| | 01/21/98 | 5,000 | $26.38 | $131,875.00 |
| | 01/21/98 | 688 | $26.44 | $18,189.00 |
| | 01/21/98 | 4,000 | $26.19 | $104,750.00 |
| | 01/21/98 | 1,500 | $26.31 | $39,468.75 |
| | 01/20/98 | 3,000 | $26.63 | $79,875.00 |
| | 01/16/98 | 1,000 | $26.75 | $26,750.00 |
| | 01/16/98 | 2,000 | $26.88 | $53,750.00 |
| | 01/16/98 | 2,000 | $26.69 | $53,375.00 |
| | 01/15/98 | 2,500 | $26.44 | $66,093.75 |
| | 01/15/98 | 2,500 | $26.38 | $65,937.50 |
| | 01/15/98 | 2,000 | $26.50 | $53,000.00 |
| | 01/14/98 | 2,500 | $26.31 | $65,781.25 |
| | 01/14/98 | 2,000 | $26.38 | $52,750.00 |

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

|  |  |  |  |
|---|---|---|---|
|  | 01/14/98 | 500 | $26.44 | $13,218.75 |
|  | 01/14/98 | 500 | $26.25 | $13,125.00 |
|  | 01/14/98 | 1,000 | $26.18 | $26,182.50 |
|  | 10/01/04 | 5,000 | $30.07 | $150,350.00 |
|  |  | **Total Proceeds =** | **$2,265,268.13** |
| Colburn | 02/28/01 | 3,000 | $36.45 | $109,350.00 |
|  | 02/28/01 | 1,500 | $36.50 | $54,750.00 |
|  | 02/28/01 | 500 | $36.58 | $18,290.00 |
|  |  | **Total Proceeds =** | **$182,390.00** |
| Dryden | 03/12/03 | 2,000 | $34.17 | $68,340.00 |
|  | 03/12/03 | 1,250 | $34.17 | $42,712.50 |
|  | 03/12/03 | 1,500 | $34.17 | $51,255.00 |
|  | 03/12/03 | 750 | $34.17 | $25,627.50 |
|  | 01/11/02 | 1,000 | $39.34 | $39,340.00 |
|  | 01/11/02 | 2,500 | $39.34 | $98,350.00 |
|  | 08/17/99 | 1,175 | $27.63 | $32,465.25 |
|  |  | **Total Proceeds =** | **$358,090.25** |
| Escue | 09/05/00 | 500 | $31.43 | $15,715.00 |
|  | 09/30/99 | 500 | $27.50 | $13,750.00 |
|  | 09/30/99 | 2,000 | $27.50 | $55,000.00 |
|  | 02/27/98 | 1,500 | $31.06 | $46,593.75 |
|  |  | **Total Proceeds =** | **$131,058.75** |
| Evans | 03/12/02 | 5,000 | $48.71 | $243,550.00 |
|  |  | **Total Proceeds =** | **$243,550.00** |
| Fanelli | 10/30/03 | 2,500 | $43.30 | $108,250.00 |
|  | 10/30/03 | 1,500 | $43.30 | $64,950.00 |
|  | 10/30/03 | 1,203 | $43.30 | $52,089.90 |
|  | 10/30/03 | 47 | $43.30 | $2,035.10 |
|  | 10/30/03 | 1,250 | $43.30 | $54,125.00 |
|  | 09/10/02 | 250 | $50.43 | $12,607.50 |
|  | 08/27/02 | 180 | $50.20 | $9,036.00 |
|  | 08/27/02 | 1,070 | $50.20 | $53,714.00 |
|  | 12/06/01 | 750 | $43.10 | $32,325.00 |

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 12/06/01 | 1,250 | $43.10 | $53,875.00 |
| | 12/06/01 | 250 | $43.10 | $10,775.00 |
| | 12/06/01 | 500 | $43.10 | $21,550.00 |
| | 02/12/01 | 1,500 | $35.83 | $53,745.00 |
| | 02/12/01 | 500 | $35.83 | $17,915.00 |
| | 02/12/01 | 1,250 | $35.83 | $44,787.50 |
| | | | **Total Proceeds =** | **$591,780.00** |
| Ferguson | 05/17/06 | 12,378 | 17.99 | $222,680.22 |
| | 12/16/04 | 5,000 | 27.83 | $139,150.00 |
| | 06/06/03 | 5,000 | $39.99 | $199,950.00 |
| | 02/25/02 | 9,999 | $44.01 | $440,055.99 |
| | 05/17/01 | 2,000 | $40.00 | $80,000.00 |
| | 12/27/00 | 1,305 | $33.00 | $43,065.00 |
| | 05/04/00 | 2,000 | $33.00 | $66,000.00 |
| | 09/16/99 | 3,000 | $26.50 | $79,500.00 |
| | | | **Total Proceeds =** | **$1,270,401.21** |
| Kelley | 10/19/00 | 1,250 | $33.68 | $42,100.00 |
| | 10/19/00 | 2,500 | $33.68 | $84,200.00 |
| | 10/19/00 | 2,250 | $33.68 | $75,780.00 |
| | 10/19/00 | 2,000 | $33.68 | $67,360.00 |
| | 10/19/00 | 1,500 | $33.68 | $50,520.00 |
| | | | **Total Proceeds =** | **$319,960.00** |
| Levine | 11/19/03 | 1,250 | $25.88 | $32,350.00 |
| | 11/19/03 | 1,250 | $28.00 | $35,000.00 |
| | 11/19/03 | 1,110 | $29.40 | $32,634.00 |
| | 11/19/03 | 140 | $29.40 | $4,116.00 |
| | 11/19/03 | 1,250 | $36.20 | $45,250.00 |
| | 06/17/03 | 1,250 | $42.05 | $52,562.50 |
| | 06/17/03 | 1,250 | $42.05 | $52,562.50 |
| | 06/17/03 | 584 | $42.05 | $24,557.20 |
| | 06/17/03 | 666 | $42.05 | $28,005.30 |
| | 09/06/02 | 750 | $47.94 | $35,955.00 |
| | 02/26/02 | 1,250 | $44.46 | $55,575.00 |
| | 02/26/02 | 1,500 | $44.46 | $66,690.00 |
| | 12/06/01 | 1,000 | $43.06 | $43,060.00 |

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

|  | 12/06/01 | 750 | $43.06 | $32,295.00 |
|---|---|---|---|---|
|  | 12/06/01 | 250 | $43.06 | $10,765.00 |
|  | 12/06/01 | 625 | $43.10 | $26,937.50 |
|  | 04/30/01 | 5,000 | $40.00 | $200,000.00 |
|  | 02/09/01 | 1,500 | $36.01 | $54,015.00 |
|  | 02/09/01 | 750 | $36.01 | $27,007.50 |
|  | 02/09/01 | 375 | $36.01 | $13,503.75 |
|  | 02/09/01 | 125 | $36.01 | $4,501.25 |
|  |  | **Total Proceeds =** | | **$877,342.50** |
| Maldini | 10/16/98 | 3,000 | $24.00 | $72,000.00 |
|  |  | **Total Proceeds =** | | **$72,000.00** |
| Monteleone | 08/05/04 | 5,000 | $31.44 | $157,200.00 |
|  | 08/05/04 | 5,000 | $31.44 | $157,200.00 |
|  | 08/05/04 | 3,388 | $31.44 | $106,518.72 |
|  | 08/05/04 | 362 | $31.44 | $11,381.28 |
|  | 08/05/04 | 1,343 | $31.44 | $42,223.92 |
|  | 08/05/04 | 1,157 | $31.44 | $36,376.08 |
|  | 03/15/02 | 3,000 | $48.40 | $145,200.00 |
|  | 03/15/02 | 2,000 | $48.40 | $96,800.00 |
|  | 05/07/01 | 2,000 | $40.33 | $80,660.00 |
|  | 05/07/01 | 1,500 | $40.33 | $60,495.00 |
|  | 05/07/01 | 2,000 | $40.33 | $80,660.00 |
|  |  | **Total Proceeds =** | | **$974,715.00** |
| Ornstein | 10/30/03 | 1,250 | $43.39 | $54,237.50 |
|  | 10/30/03 | 1,250 | $43.30 | $54,125.00 |
|  | 10/30/03 | 2,500 | $43.39 | $108,475.00 |
|  | 03/01/02 | 3,750 | $45.00 | $168,750.00 |
|  | 07/20/01 | 2,173 | $43.51 | $94,547.23 |
|  | 07/20/01 | 7,827 | $43.51 | $340,552.77 |
|  | 04/27/01 | 4,560 | $40.00 | $182,400.00 |
|  | 04/27/01 | 440 | $40.00 | $17,600.00 |
|  | 02/07/01 | 7,500 | $35.78 | $268,350.00 |
|  | 02/07/01 | 3,750 | $35.78 | $134,175.00 |
|  | 04/28/00 | 4,000 | $32.06 | $128,240.00 |
|  | 04/28/00 | 2,700 | $31.75 | $85,725.00 |

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 22 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 105-1   Filed 05/05/2008   Page 102 of 165
#1081

| | | | |
|---|---|---|---|
| | 04/28/00 | 800 | $31.63 | $25,304.00 |
| | 02/26/98 | 5,650 | $32.00 | $180,800.00 |
| | **Total Proceeds =** | | | **$1,843,281.50** |
| O'Rourke | 02/28/02 | 2,500 | $45.00 | $112,500.00 |
| | 02/28/02 | 1,500 | $45.00 | $67,500.00 |
| | 05/04/01 | 3,000 | $40.17 | $120,510.00 |
| | 03/12/01 | 3,000 | $36.61 | $109,830.00 |
| | **Total Proceeds =** | | | **$410,340.00** |
| Parkinson | 10/04/04 | 1,000 | $30.46 | $30,460.00 |
| | 01/02/02 | 2,000 | $40.27 | $80,540.00 |
| | 08/03/00 | 1,400 | $31.75 | $44,450.00 |
| | 04/27/00 | 1,000 | $32.00 | $32,000.00 |
| | 03/07/00 | 1,339 | $24.50 | $32,805.50 |
| | 08/18/99 | 1,000 | $27.63 | $27,630.00 |
| | 04/22/99 | 1,000 | $27.75 | $27,750.00 |
| | 04/22/99 | 1,000 | $26.38 | $26,375.00 |
| | 04/22/99 | 1,000 | $27.00 | $27,000.00 |
| | 01/04/99 | 1,000 | $28.88 | $28,875.00 |
| | 03/03/98 | 2,000 | $31.81 | $63,625.00 |
| | 01/02/98 | 1,882 | $26.56 | $49,990.63 |
| | **Total Proceeds =** | | | **$471,501.13** |
| Schmitz | 12/13/02 | 500 | $40.70 | $20,350.00 |
| | 03/28/02 | 500 | $49.40 | $24,700.00 |
| | 03/01/01 | 1,000 | $36.00 | $36,000.00 |
| | 03/01/01 | 2,000 | $36.00 | $72,000.00 |
| | 03/01/01 | 2,250 | $36.00 | $81,000.00 |
| | **Total Proceeds =** | | | **$234,050.00** |
| | **GRAND TOTAL =** | | | **$49,803,096.46** |

195. Collectively, Defendants Ausman, L. Borick, S. Borick, Bouskill, Brown,
Colburn, Dryden, Escue, Evans, Fanelli, Ferguson, Kelley, Levine, Maldini, Monteleone,
Ornstein, O'Rourke, Parkinson and Schmitz are referred to herein as the "Insider Selling

Defendants."

## SUPERIOR'S FALSE FINANCIAL REPORTING
## IN VIOLATION OF GAAP

196.   As a result of the Defendants' improper backdating of stock options, the Defendants caused Superior to violate GAAP, SEC regulations and Internal Revenue Service ("IRS") rules and regulations.

197.   Superior's financial results for fiscal 1993 through fiscal 2002 were included in reports filed with the SEC and in other shareholder reports.   In these reports, the Defendants represented that Superior's financial results were presented in a fair manner and in accordance with GAAP.

198.   The Defendants' representations were false and misleading as to the financial information reported, as such financial information was not prepared in conformity with GAAP, nor was the financial information "a fair presentation" of the Company's financial condition and operations, causing the financial results to be presented in violation of GAAP and SEC rules.

199.   GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Securities and Exchange Act of 1934 (the "Exchange Act"), 17 C.F.R. §210.4-01(a)(1), provides that financial statements filed with the SEC, which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate.

### Violations of GAAP

200.   During the Relevant Period, the Defendants caused the Company to understate its compensation expense by not properly accounting for its stock options under GAAP and thus overstating the Company's net earnings.

201.   Under well-settled accounting principles in effect throughout the Relevant Period, Superior did not need to record an expense for options granted to employees at the current market price ("at-the-money"). The Company was, however, required to record an

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 24 of 85   Page ID
Case 2:06-cv-07213-AHS-↴MO   Document #:363   Filed 05/05/2↴8   Page 104 of 165
#:363

expense in its financial statements for any options granted below the current market price ("in-the-money"). In order to provide Superior executives and employees with far more lucrative "in-the-money" options, while avoiding having to inform shareholders about millions of dollars incurred by the Company in compensation expenses (and without paying the IRS millions of dollars in employment taxes), the Defendants systematically falsified Company records to create the false appearance that options had been granted at the market price on an earlier date.

202. Throughout the Relevant Period, Superior accounted for stock options using the intrinsic method described in APB No. 25, "Accounting for Stock Issued to Employees." Under APB No. 25, employers were required to record as an expense on their financial statements the "intrinsic value" of a fixed stock option on its "measurement date." An option that is "in-the-money" on the measurement date has intrinsic value, and the difference between its exercise price and the quoted market price must be recorded as compensation expense to be recognized over the vesting period of the option. Options that are "at-the-money" or "out-of-the-money" on the measurement date need not be expensed. Excluding non-employee directors, APB No. 25 required employers to record compensation expenses on options granted to non-employees irrespective of whether they were "in-the-money" or not on the date of grant.

### Superior's GAAP Violations Were Material

203. Superior's false and misleading statements and omissions during and following the Relevant Period regarding its accounting were material, particularly in light of SEC guidance on materiality. SEC Staff Accounting Bulletin ("SAB") Topic 1M, Materiality, summarizes GAAP definitions of materiality. Among other items, SAB Topic 1M says: "A matter is 'material' if there is a substantial likelihood that a reasonable person would consider it important." It also stresses that materiality requires qualitative, as well as quantitative, considerations. For example, if a known misstatement would cause a significant market reaction, that reaction should be taken into account in determining the materiality of the misstatement.

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 25 of 85   Page ID
Case 2:06-cv-07213-AHS-MO   Document 103   Filed 05/05/08   Page 105 of 165
#:354

204.   SAB Topic 1M further states:

among the considerations that may well render material a quantitatively small misstatement of a financial statement item are –

\*        \*        \*

whether the misstatement masks a change in earnings or other trends

whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise

\*        \*        \*

whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability.

205.   SAB Topic 1M also says that an intentional misstatement of even immaterial items may be illegal and constitute fraudulent financial reporting.

206.   Superior's misstatements satisfy these criteria and thus were material from both a quantitative and qualitative perspective.

### Defendants Caused Superior's Financial Statements to Violate
### the Fundamental Concepts of GAAP

207.   Due to these accounting improprieties, the Company presented its financial results and statements in a manner that violated GAAP, which are described by the following statements:

(a)   The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements (APB No. 28, ¶10);

(b)   The principle that financial reporting should provide information that is useful to existing and potential investors and creditors and other users in making rational investment, credit and similar decisions (Financial Accounting Standards Board ("FASB") Statement of Concepts No. 1, ¶34);

(c)    The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and the effects of transactions, events and circumstances that change resources and claims to those resources (FASB Statement of Concepts No. 1, ¶40);

(d)    The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to stockholders for the use of enterprise resources entrusted to it. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e)    The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶58-59);

(f)    The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2, ¶79); and

(g)    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2, ¶¶95, 97).

208.    Further, the undisclosed adverse information concealed by the Defendants during the Relevant Period is the type of information which, because of SEC regulations,

regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

### Superior's Financial Statements Violated SEC Regulations

209.   During the Relevant Period, the Defendants caused Superior to violate SEC regulations by failing to disclose that the Company's senior executives and directors had been granted backdated stock options.

210.   Under SEC Regulations, Item 8 of Form 14-A and Item 11 of Form 10-K, an issuer must furnish information required by Item 402 of Regulation S-K [17 C.F.R. §229.303].   Item 402(b) and (c) require a company to provide both a Summary Compensation Table and an Option/SAR Grants table identifying the compensation of the named executive officers – the Company's CEO and its next four most highly compensated executives.   Item 402 requires particularized disclosures involving a company's stock option grants in the last fiscal year.  In the summary compensation table, the issuer must identify in a column "other annual compensation" received by the named executives that is not properly categorized as salary or bonus, including any "[a]bove market or preferential earnings on restricted stock, options, SARs or deferred compensation" paid to the officer during the period.  Item 402(b)(2)(iii)(C)(2).   In the option grant table, the issuer must identify in a column "[t]he per-share exercise or base price of the options. . . . If such exercise or base price is less than the market price of the underlying security on the date of grant, a separate, adjoining column shall be added showing market price on the date of grant. . . ." Item 402(c)(2)(iv).

211.   The Defendants caused Superior to violate SEC regulations by failing to disclose that the Company's named executive officers had been granted options with exercise prices below the market value on the date the Board or Compensation Committee approved the grant.

// /

### Violations of IRS Rules and Regulations

212.   During the Relevant Period, the Defendants further caused Superior to violate IRS rules and regulations due to its improper accounting for the backdated stock options. As a result, the Company's tax liabilities were understated, exposing Superior to potential amounts owed for back taxes, penalties and interest to the IRS for improperly reporting compensation.

213.   Further, at the hearing SEC Chairman Christopher Cox stated, "[r]ather obviously, this fact pattern [of backdating options] results in a violation of the SEC's disclosure rules, a violation of accounting rules, and also a violation of the tax laws." The Commission of the IRS, Mark Everson, agreed and further stated, "[p]icking a date on which the stock price was low in comparison with the current price gives the employee the largest potential for gain on the option and makes it possible for the employee to benefit from corporate performance that occurred before the option was granted."

214.   The Defendants caused the Company to violate Section 162(m), which generally limits a publicly traded company's tax deductions for compensation paid to each of its named executive officers to $1 million unless the pay is determined to be "performance-based."   In order for compensation to be performance-based, the Compensation Committee must have set pre-established and objective performance goals. The goals must then be approved by the shareholders. Section 162(m) defines stock options as performance-based provided they are issued at an exercise price that is no less than the fair market value of the stock on the date of the grant.   Accordingly, properly issued stock options do not have to be taken into account in calculating whether an executive's compensation has exceeded the $1 million compensation cap.

215.   Section 162(m), known as the $1 million rule, was enacted in 1993 in order to tie top executives' soaring pay packages more closely to a company's performance.  This change in the tax law turned compensation practices for a company's top executives away from straight salary-based compensation to performance-based compensation, including stock options. According to former SEC Chairman Harvey Pitt: "What [162[m]] did was

1   create incentives to find other forms of compensation so people could get over the $1

2   million threshold without running afoul of the code."

3       216.   The Defendants caused Superior to violate Section 162(m) by providing

4   backdated options to the Company's named executive officers, which were granted with

5   exercise prices that were less than the fair market value of the stock on the date of the

6   grant.   As a result all of the income resulting from the exercise of the options must be

7   included for purposes of calculating whether the named executive's compensation exceeds

8   the $1 million cap for federal tax purposes.

9       217.   The Defendants further caused the Company to violate IRS rules and

10  regulations in order to avoid having to withhold income and Federal Insurance

11  Compensation Act ("FICA") tax from its executives and employees upon the exercise of

12  Superior's stock options by improperly accounting for its Nonqualified Stock Options

13  ("NSOs") as Incentive Stock Options ("ISOs").

14      218.   ISOs are a form of equity compensation that may be provided to a company's

15  employees. ISOs are required to be granted at an exercise price that is no less than the fair

16  market value of the stock on the date of the grant and are entitled to preferential tax

17  treatment as they are not subject to income tax upon exercise of the options but only upon

18  sale of the stock (except for the possible imposition of alternative minimum tax on the

19  option spread at the time of exercise).   Stock options that do not qualify as ISOs are

20  considered to be "non-qualified stock options," or "NSOs."   NSOs are not entitled to

21  preferential accounting treatment and are subject to income tax and FICA tax withholding

22  upon exercise.   As a result, a company that fails to withhold income tax and/or FICA tax

23  upon the exercise of NSOs by its employees would be liable for the amount of the income

24  tax and FICA tax that the company failed to withhold upon exercise of the options, in

25  addition to interest and penalties.

26      219.   By improperly treating its backdated options as ISOs, the Defendants failed to

27  provide proper income tax and FICA tax withholdings upon the exercise of its options by

28  its executives and employees in violation of IRS rules and regulations.

220.   The chart below illustrates Superior's false and misleading fiscal financial results which materially understated its compensation expenses and thus overstated its earnings or understated its losses:

| Fiscal Year | Reported Earnings (Loss) | Reported Basic Earnings (Loss) Per Share |
|---|---|---|
| 1992 | $28,596,000 | $0.94[26] |
| 1993 | $45,177,000 | $1.50 |
| 1994 | $56,315,000 | $1.89 |
| 1995 | $53,064,000 | $1.80 |
| 1996 | $46,850,000 | $1.64 |
| 1997 | $55,389,000 | $1.97 |
| 1998 | $52,319,000 | $1.89 |
| 1999 | $70,808,000 | $2.63 |
| 2000 | $79,937,000 | $3.07 |
| 2001 | $55,354,000 | $2.14 |
| 2002 | $78,250,000 | $2.97 |
| 2003 | $73,720,000 | $2.76 |
| 2004 | $44,655,000 | $1.68 |
| 2005 | ($5,836,000) | ($0.22) |

## DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

221.   In a misguided effort to attract and retain employees in a competitive environment, the Defendants exceeded the bounds of the law and legitimate business judgment by backdating stock options.  The Defendants' misconduct was unjustifiable and constituted a gross breach of their fiduciary duties by:

      a.   colluding with each other to backdate stock option grants;

      b.   colluding with each other to violate GAAP and Section 162(m);

      c.   colluding with each other to produce and disseminate to Superior

---

[26] Represents the Company's reported diluted earnings per share and reflects the Company's 3-for-2 stock split effective July 21, 1993.

shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d.    colluding with each other to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

222. The Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the stock option recipients at the expense of the Company.

223. As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant, the additional compensation expenses and tax liabilities the Company may be required to incur and the costs and expenses incurred in connection with the Company's internal investigation and restatement of historical financial statements.

224. The Insider Selling Defendants have exercised tens of thousands of backdated options at improperly low prices and have then sold the shares for substantial profits. Consequently, these Defendants have been unjustly enriched by garnering tens of millions of dollars in illicit profits and depriving the Company of millions of dollars in payments that the Company should have received upon exercise of the options.

225. On May 26, 2006, *Forbes*, in an article titled, "The Next Big Scandal," quoted former SEC Chairman Harvey L. Pitt, saying "[w]hat's so terrible about backdating options grants? For one thing, it likely renders a company's proxy materials false and misleading. Proxies typically indicate that options are granted at fair market value. But if the grant is backdated, the options value isn't fair – at least not from the vantage point of the company and its shareholders."

226.     On June 18, 2006, in an article titled, "Options Scandal Brewing in Corporate World," SEC Chairman Christopher Cox was quoted, saying "[Backdating options] isn't a question about 'Whoops, I may have (accidentally) crossed a line here' . . . It's a question of knowingly betting on a race that's already been run."

227.     On July 22, 2006, *The San Francisco Chronicle* recounted SEC Chairman Christopher Cox's announcement in San Francisco on July 20, 2006 where he said, "[backdating in many cases] makes a hash of (companies') financial statements . . . [and is] poisonous [to efficient markets]. . . . It is securities fraud if you falsify books and records.  It is securities fraud if you present financial statements to the SEC that do not comply with generally accepted accounting principles.  There is no requirement that (the defendant) personally profit [to prove that a crime occurred.]"

228.     On September 6, 2006, MarketWatch, in an article titled "SEC Probing more than 100 firms on options: Cox," quoted the Chairman of the United States Senate Banking, Housing and Urban Affairs Committee ("Senate Banking Committee"), Senator Richard Shelby, saying that manipulation of options grant dates "appears to be a *black-and-white example of securities fraud*," (emphasis added) and "[c]orporate officers and directors engaging in this practice are cheating the owners of the company and should be held accountable to the fullest extent possible."

229.     Shortly thereafter, on September 6, 2006, the United States Senate Committee on Finance ("Finance Committee") held a hearing on "Executive Compensation: Backdating to the Future/Oversight of current issues regarding executive compensation including backdating of stock options; and tax treatment of executive compensation, retirement and benefits." At the hearing, the Chairman of the Committee, Senator Chuck Grassley, in his opening statement, stated: "[options backdating] is behavior that, to put it bluntly, is disgusting and repulsive.  It is behavior that ignores the concept of an 'honest day's work for an honest day's pay' and replaces it with a phrase that we hear all too often today, 'I'm going to get mine.' . . . [S]hareholders and rank-and-file employees were ripped off by senior executives who rigged stock option programs – through a process

called 'back-dating' – to further enrich themselves.  And as we have found far too often in corporate scandals of recent years, boards of directors were either asleep at the switch, or in some cases, willing accomplices themselves. . . ."

230.    Further, at the hearing, SEC Christopher Cox, stated, "[r]ather obviously, this fact pattern [of backdating options] results in a violation of the SEC's disclosure rules, a violation of accounting rules, and also a violation of the tax laws."  The Commissioner of the IRS Mark Everson agreed and further stated, "[p]icking a date on which the stock price was low in comparison with the current price gives the employee the largest potential for gain on the option and makes it possible for the employee to benefit from corporate performance that occurred before the option was granted."

231.    In his statement before the committee, Deputy Attorney General Paul J. McNulty described the practice of stock option backdating "as a brazen abuse of corporate power to artificially inflate the salaries of corporate wrongdoers at the expense of shareholders," and said "for some of those companies that have now disclosed backdated grants, corporate reputations have been tarnished and shareholder value has diminished substantially. . .."

232.    In addition to the foregoing, a recent academic study revealed that outside directors of companies were also benefiting from backdating and were recipients of manipulated stock option grants, as detailed in *The Wall Street Journal* article published on December 18, 2006:

> A new academic study suggests that many outside directors received manipulated stock-option grants, a finding that may help explain why the practice of options backdating wasn't stopped by the boards of some companies.
>
> The statistical study, which names no individuals or firms, estimates that 1,400 outside directors at 460 companies received questionable option grants, suggesting the widespread practice extended well beyond the executive suite.

The study is notable because it suggests that outside, or independent, directors -- who are supposed to play a special role safeguarding against cozy board relationships with management -- may have been co-opted in options backdating by receiving manipulated grants themselves. The New York Stock Exchange requires that a majority of board seats, and all compensation- and audit-committee members, be independent . . ..

The evidence "contributes to understanding the possible factors that led to or enabled manipulation to occur," states the unpublished study, which was conducted by professors at Harvard and Cornell universities and the French business school. . . .

The new study examined nearly 29,000 option grants awarded to outside directors at 6,577 firms between 1996 and 2005. It found that 9% of the grants fell on days when the stock price was equal to a monthly low. A random selection would lead to about 5% of grants being awarded at monthly lows. In addition, 3.8% of the grants were awarded when the share price was at the lowest price of the calendar quarter, also higher than would be expected based on random selection.

. . .

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

233.    Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress the Defendants' breaches of fiduciary duties, unjust enrichment, statutory violations and other violations of law.

234.    Plaintiff Eldred has been a stockholder of Superior since January 1996, has continuously held stock in Superior throughout the wrongs complained of and continues to hold his shares of Superior common stock.

235.   Plaintiff Mack has been a stockholder of Superior since prior to the time of the first transaction complained of in 1993, has continuously held stock in Superior throughout the wrongs complained of and continues to hold his shares of Superior common stock.

236.   Plaintiff Beatty has been a stockholder of Superior since prior to the time of the first transaction complained of in 1993, has continuously held stock in Superior throughout the wrongs complained of and continues to hold his shares of Superior common stock.

237.   Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

238.   As a result of the facts set forth herein, Plaintiffs have not made any demand on the Superior Board to institute this action against the Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

239.   At the time of the filing of this Complaint, the Board currently consists of eight members: defendants L. Borick, S. Borick, Ausman, Colburn and Evans, and directors Michael J. Joyce, Margaret S. Dano and Francisco S. Uranga.

240.   Five of the eight members of the Board, Defendants L. Borick, S. Borick, Ausman, Colburn, and Evans, are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action. Their positions during the Relevant Period are summarized in the table below:

| Director | Recipient of Backdated Options | Member of the Stock Option Committee During the Relevant Period | Member of the Audit Committee During the Relevant Period | Approved and Signed False Financial Statements |
|---|---|---|---|---|
| L. Borick | x | | | x |
| S. Borick | x | x | x | x |
| Ausman | x | x | x | x |
| Colburn | x | x | x | x |
| Evans | x | x | | x |

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

**Defendant L. Borick**

241.   Defendant L. Borick is interested in the transactions complained of herein because he directly and personally benefited from the backdating of stock options, as a recipient of backdated options granted on September 20, 2001. *See* ¶¶ 132-138. *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 962 (N.D. Cal. 2007)("By receiving backdated options, [a director] still has a chance of being subject to personal liability…Plaintiffs have [thus] pleaded facts that give rise to a reasonable doubt that [the director] was disinterested."); *In re Computer Sciences Corp. Derivative Litigation*, 2007 U.S. Dist. LEXIS 25414 at *24 (C.D. Cal. March 26, 2007) (a director who received allegedly backdated options is substantially likely to be held liable for restitution); *Zoran*, 2007 U.S. Dist. LEXIS 43402 at *42-43 (because a company's decision to reprice backdated stock options would have a materially detrimental impact on a director who received such options, such a director is not disinterested under *Rales*); *Ryan*, 918 A.2d at 355-56 (board member's acceptance of manipulated stock options raised a reasonable doubt as to that board member's disinterestedness); *Conrad*, 940 A.2d at 38 (board member's receipt of backdated stock options renders that director interested for purposes of analyzing demand futility).

242.   L. Borick, as Chairman of the Board and President of Superior, knowingly and deliberately participated in and approved the improper backdating of stock options, and knowingly and deliberately participated in and approved the Company's filing of false financial statements and other false SEC filings, as alleged herein. *See* ¶¶ 152-193, 196-220.   Therefore, L. Borick is substantially likely to be held liable for the misconduct complained of herein.  Moreover, L. Borick is the father of S. Borick, and has worked closely on the Board with his son for over twenty-five years, since the time S. Borick joined the Board in 1981.  Thus, Defendant L. Borick is not capable of disinterestedly and independently considering a pre-suit demand to commence this litigation.

**Defendant S. Borick**

243.   Defendant S. Borick is interested in the transactions complained of herein

Case 2:06-cv-07213-AHS-FMO    Document 105-2    Filed 05/06/08    Page 37 of 85    Page ID
Case 2:06-cv-07213-AHS-FMO    Document 103    Filed 05/05/08    Page 117 of 165
#860

because he directly and personally benefited from the backdating of stock options, as a recipient of backdated options granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002. *See* ¶¶ 111-145. *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp. 2d at 962 ("By receiving backdated options, [a director] still has a chance of being subject to personal liability…Plaintiffs have [thus] pleaded facts that give rise to a reasonable doubt that [the director] was disinterested."); *In re Computer Sciences Corp.*, 2007 U.S. Dist. LEXIS 25414 at *24 (a director who received allegedly backdated options is substantially likely to be held liable for restitution); *Zoran*, 2007 U.S. Dist. LEXIS 43402 at *42-43 (because a company's decision to reprice backdated stock options would have a materially detrimental impact on a director who received such options, such a director is not disinterested under *Rales*); *Ryan*, 918 A.2d at 355-56 (board member's acceptance of manipulated stock options raised a reasonable doubt as to that board member's disinterestedness); *Conrad*, 940 A.2d at 38 (board member's receipt of backdated stock options renders that director interested for purposes of analyzing demand futility).

244.    As a former member of the Stock Option Committee, S. Borick also backdated the stock options purportedly granted on May 31, 1994, February 1, 1995 and April 14, 1997. *See* ¶¶ 91-110. As S. Borick granted backdated stock options, he is substantially likely to be held liable for the misconduct complained of herein. *See, e.g., In re Computer Scis. Corp. Derivative Litig.*, 244 F.R.D. 580, 591 (C.D. Cal. 2007) ("*Computer Scis. II*") (finding that the complaint raises a reasonable doubt as to the interestedness of compensation committee member Bailey "by virtue of having concurrently served on the committee that most directly controlled [stock option grants'] timing, pricing and approval"); *Edmonds*, 524 F. Supp. 2d at 1277 (holding that demand is futile as to the compensation committee members who backdated options); *TriQuint*, 2008 U.S. Dist. LEXIS 19880 at *30; *In re THQ, Inc. Deriv. Litig.*, No. BC357699, 2007 WL 4990689, slip op. at 4 (Cal. Super. Ct. Oct. 11, 2007) (finding that demand was excused as to the compensation committee members who were alleged to have granted the backdated

options); *Ryan*, 918 A.2d at 355; *Conrad*, 940 A.2d at 40 (excusing demand as to the compensation committee members because a reasonable inference is raised that they knowingly backdated options).

245.   As a member of the Audit Committee from 1994 to 1997, S. Borick knowingly and deliberately approved the filing of false financial statements and other false SEC filings. *See* ¶¶ 152-193, 196-220.  S. Borick knowingly and deliberately participated in and approved the improper backdating of stock options and knowingly and deliberately participated in and approved the Company's filing of false financial statements and other false SEC filings, as alleged herein, and is therefore substantially likely to be held liable for the misconduct complained of herein.   Additionally, S. Borick's current principal professional occupation is his position as President and CEO of the Company.   In this position. S. Borick stands to earn hundreds of thousands of dollars in annual salary, bonuses, and other compensation, all of which must be approved by defendants Evans, Ausman, Colburn and Parkinson, who are currently members of the Compensation and Benefits Committee.  Moreover, S. Borick is the son of L. Borick, and has worked closely on the Board with his father for over twenty-five years, since the time S. Borick joined the Board in 1981.  As a result of the foregoing, Defendant S. Borick is not capable of disinterestedly and independently considering a pre-suit demand to commence this litigation.

### Defendant Ausman

246.   Defendant Ausman is interested in the transactions complained of herein because he directly and personally benefited from the backdating of stock options, as a recipient of backdated options granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002. *See* ¶¶ 111-145. *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp. 2d at 962 ("By receiving backdated options, [a director] still has a chance of being subject to personal liability...Plaintiffs have [thus] pleaded facts that give rise to a reasonable doubt that [the director] was disinterested."); *In re Computer Sciences Corp.*, 2007 U.S. Dist. LEXIS 25414 at *24 (a director who

received allegedly backdated options is substantially likely to be held liable for restitution); *Zoran*, 2007 U.S. Dist. LEXIS 43402 at *42-43 (because a company's decision to reprice backdated stock options would have a materially detrimental impact on a director who received such options, such a director is not disinterested under *Rales*); *Ryan*, 918 A.2d at 355-56 (board member's acceptance of manipulated stock options raised a reasonable doubt as to that board member's disinterestedness); *Conrad*, 940 A.2d at 38 (board member's receipt of backdated stock options renders that director interested for purposes of analyzing demand futility).

247.   As a member of the Stock Option Committee, Ausman also backdated the stock options purportedly granted on January 4, 1993, May 31, 1994, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002, which included option grants to himself and other Defendants. *See* ¶¶ 84-145.  As Ausman granted backdated stock options, he is substantially likely to be held liable for the misconduct complained of herein. *See, e.g., Computer Scis. II*, 244 F.R.D. at 591 (finding that the complaint raises a reasonable doubt as to the interestedness of compensation committee member Bailey "by virtue of having concurrently served on the committee that most directly controlled [stock option grants'] timing, pricing and approval"); *Edmonds*, 524 F. Supp. 2d at 1277 (holding that demand is futile as to the compensation committee members who backdated options); *TriQuint*, 2008 U.S. Dist. LEXIS 19880 at *30; *In re THQ, Inc. Deriv. Litig.*, 2007 WL 4990689, slip op. at 4 (finding that demand was excused as to the compensation committee members who were alleged to have granted the backdated options); *Ryan*, 918 A.2d at 355; *Conrad*, 940 A.2d at 40 (excusing demand as to the compensation committee members because a reasonable inference is raised that they knowingly backdated options).

248.   As a member of the Audit Committee since at least 1995, Ausman knowingly and deliberately approved the filing of false financial statements and other false SEC filings. *See* ¶¶ 152-193, 196-220.  Ausman knowingly and deliberately participated in and approved the improper backdating of stock options and knowingly and deliberately

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 40 of 85   Page ID
Case 2:06-cv-07213-AHS-｣ ｣ﾉlO      Document #:388      Filed 05/05/2ᴄᴜ8      Page 120 of 165
#:388

participated in and approved the Company's filing of false financial statements and other

false SEC filings, as alleged herein, and is therefore substantially likely to be held liable

for the misconduct complained of herein.  As a result of the foregoing, Defendant Ausman

is not capable of disinterestedly and independently considering a pre-suit demand to

commence this litigation.

### Defendant Brown

249.   Defendant Brown is interested in the transactions complained of herein

because he directly and personally benefited from the backdating of stock options, as a

recipient of backdated options granted on January 4, 1993, May 31, 1994, February 1,

1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001

and October 9, 2002.  *See* ¶¶ 84-145.  *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp.

2d at 962 ("By receiving backdated options, [a director] still has a chance of being subject

to personal liability...Plaintiffs have [thus] pleaded facts that give rise to a reasonable

doubt that [the director] was disinterested."); *In re Computer Sciences Corp.*, 2007 U.S.

Dist. LEXIS 25414 at *24 (a director who received allegedly backdated options is

substantially likely to be held liable for restitution);  *Zoran*, 2007 U.S. Dist. LEXIS 43402

at *42-43 (because a company's decision to reprice backdated stock options would have a

materially detrimental impact on a director who received such options, such a director is

not disinterested under *Rales*); *Ryan*, 918 A.2d at 355-56 (board member's acceptance of

manipulated stock options raised a reasonable doubt as to that board member's

disinterestedness); *Conrad*, 940 A.2d at 38 (board member's receipt of backdated stock

options renders that director interested for purposes of analyzing demand futility).

250.   As a member of the Board from 1972 to December 2006, Brown knowingly

and deliberately approved the filing of false financial statements and other false SEC

filings.  *See* ¶¶ 152-193, 196-220.  Brown knowingly and deliberately participated in and

approved the Company's filing of false financial statements and other false SEC filings, as

alleged herein, and is therefore substantially likely to be held liable for the misconduct

complained of herein.  As a result of the foregoing, Defendant Brown is not capable of

disinterestedly and independently considering a pre-suit demand to commence this litigation.

### **Defendant Colburn**

251.   Defendant Colburn is interested in the transactions complained of herein because he directly and personally benefited from the backdating of stock options, as a recipient of backdated options granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002. *See* ¶¶ 98-145. *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp. 2d at 962 ("By receiving backdated options, [a director] still has a chance of being subject to personal liability…Plaintiffs have [thus] pleaded facts that give rise to a reasonable doubt that [the director] was disinterested."); *In re Computer Sciences Corp.*, 2007 U.S. Dist. LEXIS 25414 at *24 (a director who received allegedly backdated options is substantially likely to be held liable for restitution); *Zoran*, 2007 U.S. Dist. LEXIS 43402 at *42-43 (because a company's decision to reprice backdated stock options would have a materially detrimental impact on a director who received such options, such a director is not disinterested under *Rales*); *Ryan*, 918 A.2d at 355-56 (board member's acceptance of manipulated stock options raised a reasonable doubt as to that board member's disinterestedness); *Conrad*, 940 A.2d at 38 (board member's receipt of backdated stock options renders that director interested for purposes of analyzing demand futility).

252.   As a former member of the Stock Option Committee, Colburn also backdated the stock options purportedly granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002, which included option grants to himself and other Defendants. *See* ¶¶ 111-145. As Colburn granted backdated stock options, he is substantially likely to be held liable for the misconduct complained of herein. *See, e.g., Computer Scis. II*, 244 F.R.D. at 591 (finding that the complaint raises a reasonable doubt as to the interestedness of compensation committee member Bailey "by virtue of having concurrently served on the committee that most directly controlled [stock option grants'] timing, pricing and approval"); *Edmonds*, 524 F. Supp. 2d at 1277 (holding

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 42 of 85   Page ID
Case 2:06-cv-07213-AHS-₁ ₁MO   Document 393   Filed 05/05/2₋₀8   Page 122 of 165
#:395

that demand is futile as to the compensation committee members who backdated options); *TriQuint*, 2008 U.S. Dist. LEXIS 19880 at *30; *In re THQ, Inc. Deriv. Litig.*, 2007 WL 4990689, slip op. at 4 (finding that demand was excused as to the compensation committee members who were alleged to have granted the backdated options); *Ryan*, 918 A.2d at 355; *Conrad*, 940 A.2d at 40 (excusing demand as to the compensation committee members because a reasonable inference is raised that they knowingly backdated options).

253.   As a member of the Audit Committee since at least 1993, Colburn knowingly and deliberately approved the filing of false financial statements and other false SEC filings. *See* ¶¶ 152-193, 196-220. Colburn knowingly and deliberately participated in and approved the improper backdating of stock options and knowingly and deliberately participated in and approved the Company's filing of false financial statements and other false SEC filings, as alleged herein, and is therefore substantially likely to be held liable for the misconduct complained of herein. As a result of the foregoing, Defendant Colburn is not capable of disinterestedly and independently considering a pre-suit demand to commence this litigation.

### Defendant Evans

254.   Defendant Evans is interested in the transactions complained of herein because he directly and personally benefited from the backdating of stock options, as a recipient of backdated options granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002. *See* ¶¶ 111-145. *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp. 2d at 962 ("By receiving backdated options, [a director] still has a chance of being subject to personal liability…Plaintiffs have [thus] pleaded facts that give rise to a reasonable doubt that [the director] was disinterested."); *In re Computer Sciences Corp.*, 2007 U.S. Dist. LEXIS 25414 at *24 (a director who received allegedly backdated options is substantially likely to be held liable for restitution); *Zoran*, 2007 U.S. Dist. LEXIS 43402 at *42-43 (because a company's decision to reprice backdated stock options would have a materially detrimental impact on a director who received such options, such a director is not disinterested under *Rales*);

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 43 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 103   Filed 05/06/2008   Page 123 of 165
#:572

*Ryan*, 918 A.2d at 355-56 (board member's acceptance of manipulated stock options raised a reasonable doubt as to that board member's disinterestedness); *Conrad*, 940 A.2d at 38 (board member's receipt of backdated stock options renders that director interested for purposes of analyzing demand futility).

255.   As a former member of the Stock Option Committee, Evans also backdated the stock options purportedly granted on February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002, which included option grants to himself and other of the Director Defendants. *See* ¶¶ 98-145. As Evans granted backdated stock options, he is substantially likely to be held liable for the misconduct complained of herein. *See, e.g., Computer Scis. II*, 244 F.R.D. at 591 (finding that the complaint raises a reasonable doubt as to the interestedness of compensation committee member Bailey "by virtue of having concurrently served on the committee that most directly controlled [stock option grants'] timing, pricing and approval"); *Edmonds*, 524 F. Supp. 2d at 1277 (holding that demand is futile as to the compensation committee members who backdated options); *TriQuint*, 2008 U.S. Dist. LEXIS 19880 at *30; *In re THQ, Inc. Deriv. Litig.*, 2007 WL 4990689, slip op. at 4 (finding that demand was excused as to the compensation committee members who were alleged to have granted the backdated options); *Ryan*, 918 A.2d at 355; *Conrad*, 940 A.2d at 40 (excusing demand as to the compensation committee members because a reasonable inference is raised that they knowingly backdated options).

256.   As a member of the Board since 1994, Evans knowingly and deliberately approved the filing of false financial statements and other false SEC filings. *See* ¶¶ 152-193, 196-220.   Evans knowingly and deliberately participated in and approved the improper backdating of stock options and knowingly and deliberately participated in and approved the Company's filing of false financial statements and other false SEC filings, as alleged herein, and is therefore substantially likely to be held liable for the misconduct complained of herein.   As a result of the foregoing, Defendant Evans is not capable of disinterestedly and independently considering a pre-suit demand to commence this

1 litigation.

2 **Defendant Parkinson**

3      257.   Defendant Parkinson is interested in the transactions complained of herein

4 because he directly and personally benefited from the backdating of stock options, as a

5 recipient of backdated options granted on February 1, 1995, September 3, 1998, September

6 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002. *See* ¶¶ 98-104,

7 111-145. *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp. 2d at 962 ("By receiving

8 backdated options, [a director] still has a chance of being subject to personal

9 liability…Plaintiffs have [thus] pleaded facts that give rise to a reasonable doubt that [the

10 director] was disinterested."); *In re Computer Sciences Corp.*, 2007 U.S. Dist. LEXIS

11 25414 at *24 (a director who received allegedly backdated options is substantially likely to

12 be held liable for restitution); *Zoran*, 2007 U.S. Dist. LEXIS 43402 at *42-43 (because a

13 company's decision to reprice backdated stock options would have a materially

14 detrimental impact on a director who received such options, such a director is not

15 disinterested under *Rales*); *Ryan*, 918 A.2d at 355-56 (board member's acceptance of

16 manipulated stock options raised a reasonable doubt as to that board member's

17 disinterestedness); *Conrad*, 940 A.2d at 38 (board member's receipt of backdated stock

18 options renders that director interested for purposes of analyzing demand futility).

19      258.   As a member of the Audit Committee from 1998 to December 2006,

20 Parkinson knowingly and deliberately approved the filing of false financial statements and

21 other false SEC filings. *See* ¶¶ 152-193, 196-220. Parkinson knowingly and deliberately

22 participated in and approved the Company's filing of false financial statements and other

23 false SEC filings, as alleged herein, and is therefore substantially likely to be held liable

24 for the misconduct complained of herein. As a result of the foregoing, Defendant

25 Parkinson is not capable of disinterestedly and independently considering a pre-suit

26 demand to commence this litigation.

27      259.   Furthermore, demand is excused because the misconduct complained of

28 herein was not, and could not have been, an exercise of good faith business judgment. As

represented in Superior's proxy statements, the purpose of the Company's shareholder-approved stock option plans is to "retain[] and attract[] competent management personnel by providing to participating directors, officers and key employees who render valuable services to the Company added incentive for high levels of performance and for unusual efforts to increase the earnings of the Company." However, by granting stock options with backdated exercise prices, the Director Defendants undermined the purpose of the stock option plans by awarding employees compensation that had intrinsic value regardless of Superior's performance. In effect, this practice was nothing more than secret handouts to executives and employees at the expense of unsuspecting shareholders and the Company.

260. The Director Defendants could have achieved the stated purposes of "retain[ing] and attract[ing] competent management personnel by providing to participating directors, officers and key employees who render valuable services to the Company added incentive for high levels of performance and for unusual efforts to increase the earnings of the Company" by granting those employees additional stock options under their incentive plans, or by granting stock options at a price less than the fair market value on the date of the grant and simply disclosing and expensing these grants. Instead, the Director Defendants, specifically the members of the Stock Option Committee with the knowledge and approval of the remaining Director Defendants, backdated stock option grants in violation of the 1993 Plan and improperly reported these grants in their financial disclosures to improve their bottom line.

261. The practice of backdating stock options cannot be a valid exercise of business judgment.

## COUNT I
### Against Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson for Violations of § 10(b) and Rule 10b-5 of the Exchange Act

262. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

263.   As a result of their making and approving of the backdated stock option grant purportedly granted on October 9, 2002, the Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson, individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, intentionally or recklessly employed devices and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

264.   Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson, as top executive officers and/or directors of the Company from before October 9, 2002 until after April 4, 2003, are liable as direct participants in the wrongs complained of herein.   L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson all knew that the Superior stock options that were purportedly granted on October 9, 2002 were not actually granted on October 9, 2002 because each of these individuals were recipients of this grant, members of the Superior Board and/or members of the Stock Option Committee during the time when this stock option was purportedly granted.

265.   As members of the Stock Option Committee during Fiscal Year 2002, Defendants Ausman, Colburn and Evans controlled the timing and pricing of all stock options granted under the 1993 Plan, including the timing and pricing of the stock options purportedly granted on October 9, 2002.   Ausman, Colburn and Evans all knew that the Superior stock options that were purportedly granted on October 9, 2002 were not actually granted on October 9, 2002 because Ausman, Colburn and Evans were directly involved in selecting the October 9, 2002 grant date on a date that occurred after October 9, 2002, as alleged herein.   Thus, Ausman, Colburn and Evans each acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.

//

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 47 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO     Document 378     Filed 05/05/2008     Page 127 of 165
#:378

266.   Defendant Ornstein, as the Company has admitted, acted with scienter in that he had actual knowledge of the fraud set forth herein.  As Defendant Ornstein "was aware of the use of hindsight to select option grant dates with lower exercise prices," he acted with scienter in that he had actual knowledge of the fraud set forth herein and failed to disclose such fraud.

267.   Defendants L. Borick, S. Borick, Brown and Parkinson were officers and/or directors of Superior from before October 9, 2002 until after April 4, 2003.  S. Borick, Brown and Parkinson were all directors of Superior and recipients of the stock options purportedly granted on October 9, 2002 and knew that the Superior stock options purportedly granted on October 9, 2002 were not actually granted on that date, as alleged herein.  Defendants L. Borick, S. Borick, Brown and Parkinson, as directors, officers and/or stock option recipients at the time that the October 9, 2002 stock options were granted, acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.

268.   Through their positions of control and authority as officers and/or directors of the Company, each of Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson was able to and did control the conduct complained of herein.

269.   Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them and they had a duty to know those facts.  Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson were among the senior management and directors of the Company and were therefore directly responsible for the fraud alleged herein.

270.   Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson also each signed the Company's Form 10-K for the fiscal year ended December 31, 2002, filed with the SEC on March 28, 2003 (the "2002 Form 10-K").  At

the time that L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson signed the 2002 10-K, each of them knew that the financial statements contained therein for the 2002 fiscal year were materially false and misleading because these financial statements failed to properly record compensation expenses associated with the purported October 9, 2002 grant date, which each of Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson knew occurred after that date, as alleged herein. Therefore, Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson all knowingly violated Section 10(b) and Rule 10b-5 when they signed and filed the 2002 Form 10-K because they knew that the 2002 Form 10-K did not properly account for the expenses associated with the backdated, in-the-money stock option grants purportedly made on October 9, 2002. Thus, Defendants L. Borick, S. Borick, Ornstein, Ausman, Brown, Colburn, Evans and Parkinson all acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.

271. The Company relied upon the Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson's fraud in granting the Defendants options to purchase shares of the Company's common stock, as alleged herein.

272. As a direct and proximate result of the Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson's foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company may be required to incur, the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant and costs and expenses that have been and will continue to be incurred in connection with the Company's internal investigation and restatement of financial results.

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 49 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO     Document 108     Filed 05/05/2008     Page 129 of 165
#:3108

## COUNT II

### Against Defendants L. Borick, S. Borick, Ausman,

### Brown, Colburn, Evans, Ornstein and Parkinson

### for Violations of §20(a) of the Exchange Act

273.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

274.   Defendants L. Borick, S. Borick, Ausman, Brown, Colburn, Evans, Ornstein and Parkinson, by virtue of their positions with the Company and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of the Company within the meaning of §20(a) of the Exchange Act.  They had the power and influence and exercised the same to cause the Company to engage in the illegal conduct and practices complained of herein.

## COUNT III

### Against Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi,

### Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L.

### Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson for Accounting

275.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

276.   As alleged in detail herein, each of Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson had a fiduciary duty to, among other things, refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

277.   As alleged in detail herein, Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson breached their fiduciary duties by, among other things, granting backdated stock options to

themselves and/or certain other officers and directors of the Company and covering up their misconduct.

278.   Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants.

279.   As a result of Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson's misconduct, the Company has been damaged financially and is entitled to a recovery as a result thereof.

280.   Plaintiffs demand an accounting be made of all stock option grants made to any of Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson, including, but not limited to, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the dates the options were exercised, as well as the disposition of any proceeds received by any of Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson via sale or other exercise of the grants.

## COUNT IV

### Against Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson for Breach of Fiduciary Duty and/or Aiding and Abetting

281.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

//

282.   As alleged in detail herein, each of Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson had a fiduciary duty to, among other things, refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

283.   As alleged in detail herein, Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson breached their fiduciary duties by, among other things, granting backdated stock options to themselves and/or certain other officers and directors of the Company and covering up their misconduct.

284.   In breach of their fiduciary duties of loyalty and good faith, Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson agreed to and did participate with and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets to themselves and/or other Company insiders.

285.   Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson's foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the recipients at the expense of the Company.

286.   As a direct and proximate result of Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson's foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company will be required to incur, the loss of funds paid to the Company

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 52 of 85   Page ID
Case 2:06-cv-07213-AHS-, MO   Document 303   Filed 05/05/2008   Page 132 of 165
#:301

upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant, and costs and expenses incurred in connection with the Company's internal investigation and restatement of financial results.

## COUNT V

**Against the Defendants Bouskill, Dryden, Escue, Fanelli,**

**Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke,**

**Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans,**

**Ornstein and Parkinson for**

**Common Law Restitution/Unjust Enrichment**

287.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

288.   Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson were unjustly enriched by their receipt and retention of backdated stock option grants and the proceeds they received through exercising backdated stock options, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

289.   To remedy the Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson's unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

/ /

/ /

/ /

/ /

## COUNT VI

### Against Defendants Bouskill, Dryden, Escue, Fanelli,

### Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke,

### Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and

### Parkinson for Rescission

290.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

291.   As a result of the acts alleged herein, the stock option contracts between Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson and the Company entered into during the Relevant Period were obtained through the Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the 1993 Plan.

292.   All contracts which provide for stock option grants to Defendants Bouskill, Dryden, Escue, Fanelli, Ferguson, Kakar, Kazmi, Kelley, Levine, Maldini, Monteleone, O'Rourke, Schmitz, Ausman, Brown, L. Borick, S. Borick, Colburn, Evans, Ornstein and Parkinson and were entered into during the Relevant Period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT VII

### Against the Insider Selling Defendants

### for Violation of California Corporation Code §25402

293.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

294.   At the time that the Insider Selling Defendants sold their shares of the Company's common stock as set forth herein, by reason of their high executive and/or directorial positions with the Company, the Insider Selling Defendants had access to

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 54 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document #:363   Filed 05/05/2008   Page 134 of 165
#:363

highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of the Company's option backdating, improper accounting, and false financial statements.

295.   At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of the Company's shares at that time.

296.   The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information regarding the Company, and thus sold their shares of the Company's common stock in California in violation of California Corporations Code § 25402.

297.   Pursuant to California Corporations Code § 25502.5, the Insider Selling Defendants, and each of them, are liable to the Company for damages in an amount up to three times the difference between the price at which the stock was sold by these defendants, and each of them, and the market value which the stock would have had at the time of the sale if the information known to these defendants had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

WHEREFORE, Plaintiffs demand judgment as follows:

A.   Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' misconduct;

B.   Ordering the Defendants that received backdated stock options to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized, and imposing a constructive trust thereover;

C.   Awarding the Company treble damages as provided by California Corporations Code § 25502.5;

D.   Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties;

E.   Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 55 of 85   Page ID
#:384
Case 2:06-cv-07213-AHS-FMO   Document 103   Filed 05/05/08   Page 135 of 168

F.   Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury.

Dated:  May 5, 2008

Respectfully submitted,

ROSMAN & GERMAIN LLP

Daniel L. Germain (State Bar No 143334)
16311 Ventura Boulevard
Suite 1200
Encino, CA  91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885

*Liaison Counsel for Plaintiffs*

SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
Eric L. Zagar (State Bar No. 250519)
Michael C. Wagner (admitted *pro hac vice*)
Alison K. Clark
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile: (610) 667-7056

*Lead Counsel for Plaintiffs*

VERIFIED SECOND AMENDED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

Case 2:06-cv-07213-AHS-FMO    Document 105-2    Filed 05/06/08    Page 56 of 85    Page ID
Case 2:06-cv-07213-AHS-FMO    Document 105    Filed 05/05/2008    Page 136 of 165
#:885

## Exhibit "A"

1.      S. Borick's Form 4 filed with the SEC on August 10, 2006 falsely reported that options granted to S. Borick had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

2.      Ferguson's Form 4 filed with the SEC on May 24, 2006 falsely reported that options granted to Ferguson had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and April 14, 1997;

3.      S. Borick's Form 4 filed with the SEC on March 01, 2006 falsely reported that options granted to S. Borick had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

4.      S. Borick's Form 4 filed with the SEC on December 29, 2004 falsely reported that options granted to S. Borick had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

5.      Colburn's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Colburn had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and February 1, 1995;

6.      Parkinson's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Parkinson had been granted on October 9, 2002,

1

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

7.    Brown's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Brown had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

8.    O'Rourke's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to O'Rourke had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and April 14, 1997;

9.    Ornstein's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Ornstein had been granted on October 9, 2002, September 20, 2001, September 20, 2000 and September 24, 1999;

10.    Ferguson's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Ferguson had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and April 14, 1997;

11.    Fanelli's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Fanelli had been granted on October 9, 2002 and September 20, 2000;

12.    Levine's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Levine had been granted on October 9, 2002, September 20, 2001 and September 20, 2000;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 58 of 85   Page ID
Case 2:06-cv-07213-AHS-۱ ۸۷O   Document 387   Filed 05/05/2۵۸8   Page 138 of 165
#:387

13.   Kelley's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Kelley had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and April 14, 1997;

14.   Bouskill's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Bouskill had been granted on October 9, 2002, September 20, 2001 and September 20, 2000;

15.   Ausman's Form 4 filed with the SEC on March 24, 2005 falsely reported that options granted to Ausman had been granted on October 9, 2002, September 20, 2001 and September 20, 2000;

16.   S. Borick's Form 4 filed with the SEC on December 29, 2004 falsely reported that options granted to S. Borick had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

17.   Ferguson's Form 4 filed with the SEC on December 17, 2004 falsely reported that options granted to Ferguson had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998, April 14, 1997 and February 1, 1995;

18.   Colburn's Form 4 filed with the SEC on November 12, 2004 falsely reported that options granted to Colburn had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and February 1, 1995;

19.   Parkinson's Form 4 filed with the SEC on October 4, 2004 falsely reported that options granted to Parkinson  had been granted on October 9, 2002,

3

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 59 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 303   Filed 05/05/2008   Page 139 of 165
#:303

September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and February 1, 1995;

20.    Brown's Form 4 filed with the SEC on October 1, 2004 falsely reported that options granted to Brown had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and February 1, 1995;

21.    Ausman's Form 4 filed with the SEC on September 23, 2004 falsely reported that options granted to Ausman had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

22.    Monteleone's Form 4 filed with the SEC on August 11, 2004 falsely reported that options granted to Monteleone had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

23.    Colburn's Form 4 filed with the SEC on May 7, 2004 falsely reported that options granted to Colburn had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and February 1, 1995;

24.    Parkinson's Form 4 filed with the SEC on May 7, 2004 falsely reported that options granted to Parkinson had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and February 1, 1995;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

25. Evans's Form 4 filed with the SEC on May 7, 2004 falsely reported that options granted to Evans had been granted on October 9, 2002, September 20, 2000, September 24, 1999 and September 3, 1998;

26. Brown's Form 4 filed with the SEC on May 7, 2004 falsely reported that options granted to Brown had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and February 1, 1995;

27. Ausman's Form 4 filed with the SEC on May 7, 2004 falsely reported that options granted to Ausman had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

28. O'Rourke's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to O'Rourke had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and April 14, 1997;

29. Ornstein's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Ornstein had been granted on October 9, 2002, September 20, 2001, September 20, 2000 and September 24, 1999;

30. Monteleone's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Monteleone had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

31. Levine's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Levine had been granted on October 9, 2002, September 20, 2001 and September 20, 2000;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

32.     Kelley's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Kelley had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998 and April 14, 1997;

33.     Kakar's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Kakar had been granted on October 9, 2002, September 20, 2000 and September 24, 1999;

34.     Ferguson's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Ferguson had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999, September 3, 1998, April 14, 1997 and February 1, 1995;

35.     Fanelli's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Fanelli had been granted on October 9, 2002, September 20, 2000 and September 24, 1999;

36.     Bouskill's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to Bouskill had been granted on October 9, 2002, September 20, 2001 and September 20, 2000;

37.     S. Borick's Form 4 filed with the SEC on May 4, 2004 falsely reported that options granted to S. Borick had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

38.     L. Borick's Form 4 filed with the SEC on December 11, 2003 falsely reported that options granted to L. Borick had been granted on September 20, 2001;

6

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO    Document 105-2    Filed 05/06/08    Page 62 of 85    Page ID
Case 2:06-cv-07213-AHS-, MO    Document 393    Filed 05/05/_08    Page 142 of 165
#:391

39.     L. Borick's Form 4 filed with the SEC on December 3, 2003 falsely reported that options granted to L. Borick had been granted on September 20, 2001;

40.     Levine's Form 4 filed with the SEC on November 19, 2003 falsely reported that options granted to Levine had been granted on October 9, 2002, September 20, 2001, September 20, 2000 and September 24, 1999;

41.     Bouskill's Form 4 filed with the SEC on November 3, 2003 falsely reported that options granted to Bouskill had been granted on September 20, 2001, September 20, 2000 and September 24, 1999;

42.     Ornstein's Form 4 filed with the SEC on October 31, 2003 falsely reported that options granted to Ornstein had been granted on October 9, 2002, September 20, 2001, September 20, 2000, September 24, 1999 and September 3, 1998;

43.     Dryden's Form 4 filed with the SEC on September 14, 1999 falsely reported that options granted to Dryden had been granted on January 4, 1993, February 1, 1995, April 14, 1997 and September 3, 1998;

44.     Parkinson's Form 4 filed with the SEC on September 21, 1999 falsely reported that options granted to Parkinson had been granted on February 1, 1995 and September 3, 1998;

45.     Escue's Form 4 filed with the SEC on October 6, 1999 falsely reported that options granted to Escue had been granted on February 1, 1995 and September 3, 1998;

7

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 63 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 8902   Filed 05/05/2008   Page 143 of 165
#:8903

46.   Ferguson's Form 4 filed with the SEC on October 6, 1999 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997 and September 3, 1998;

47.   S. Borick's Form 4 filed with the SEC on January 10, 2000 falsely reported that options granted to S. Borick had been granted on September 3, 1998 and September 24, 1999;

48.   Levine's Form 4 filed with the SEC on January 10, 2000 falsely reported that options granted to Levine had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

49.   S. Borick's Form 4 filed with the SEC on April 11, 2000 falsely reported that options granted to S. Borick had been granted on September 3, 1998 and September 24, 1999;

50.   Parkinson's Form 4 filed with the SEC on April 11, 2000 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998 and September 24, 1999;

51.   Ornstein's Form 4 filed with the SEC on May 8, 2000 falsely reported that options granted to Ornstein had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

52.   Parkinson's Form 4 filed with the SEC on May 8, 2000 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998 and September 24, 1999;

53.   Ferguson's Form 4 filed with the SEC on June 12, 2000 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

8

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

54.   O'Rourke's Form 4 filed with the SEC on September 11, 2000 falsely reported that options granted to O'Rourke had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

55.   Parkinson's Form 4 filed with the SEC on September 11, 2000 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998 and September 24, 1999;

56.   Escue's Form 4 filed with the SEC on October 10, 2000 falsely reported that options granted to Escue had been granted on September 3, 1998;

57.   Kelley's Form 4 filed with the SEC on November 8, 2000 falsely reported that options granted to Kelley had been granted on February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

58.   S. Borick's Form 4 filed with the SEC on January 12, 2001 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

59.   Brown's Form 4 filed with the SEC on January 12, 2001 falsely reported that options granted to Brown had been granted on February 1, 1995, September 3, 1998, September 24, 1999 and September 20, 2000;

60.   Ferguson's Form 4 filed with the SEC on January 12, 2001 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

61.   Colburn's Form 4 filed with the SEC on February 13, 2001 falsely reported that options granted to Colburn had been granted on February 1, 1995, September 3, 1998 and September 24, 1999;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

62.   Colburn's Form 4 filed with the SEC on March 12, 2001 falsely reported that options granted to Colburn had been granted on February 1, 1995, September 3, 1998, September 24, 1999 and September 20, 2000;

63.   Fanelli's Form 4 filed with the SEC on March 12, 2001 falsely reported that options granted to Fanelli had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

64.   Levine's Form 4 filed with the SEC on March 12, 2001 falsely reported that options granted to Levine had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

65.   Ornstein's Form 4 filed with the SEC on March 12, 2001 falsely reported that options granted to Ornstein had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

66.   Bouskill's Form 4 filed with the SEC on April 6, 2001 falsely reported that options granted to Bouskill had been granted on April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

67.   O'Rourke's Form 4 filed with the SEC on April 6, 2001 falsely reported that options granted to O'Rourke had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

68.   Schmitz's Form 4 filed with the SEC on April 9, 2001 falsely reported that options granted to Schmitz had been granted on January 4, 1993, February 1, 1995 and September 3, 1998;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

69.    Levine's Form 4 filed with the SEC on May 7, 2001 falsely reported that options granted to Levine had been granted on February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

70.    Ornstein's Form 4 filed with the SEC on May 7, 2001 falsely reported that options granted to Ornstein had been granted on February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

71.    Bouskill's Form 4 filed with the SEC on June 11, 2001 falsely reported that options granted to Bouskill had been granted on April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

72.    Ferguson's Form 4 filed with the SEC on June 11, 2001 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

73.    Monteleone's Form 4 filed with the SEC on June 11, 2001 falsely reported that options granted to Monteleone had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

74.    O'Rourke's Form 4 filed with the SEC on June 11, 2001 falsely reported that options granted to O'Rourke had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

75.    Ornstein's Form 4 filed with the SEC on August 10, 2001 falsely reported that options granted to Ornstein had been granted on February 1, 1995, September 3, 1998, September 24, 1999 and September 20, 2000;

11

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

76.    S. Borick's Form 4 filed with the SEC on January 23, 2002 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

77.    Fanelli's Form 4 filed with the SEC on January 23, 2002 falsely reported that options granted to Fanelli had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

78.    Levine's Form 4 filed with the SEC on January 23, 2002 falsely reported that options granted to Levine had been granted on February 1, 1995, September 3, 1998, September 24, 1999 and September 20, 2000;

79.    Bouskill's Form 4 filed with the SEC on February 19, 2002 falsely reported that options granted to Bouskill had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

80.    Dryden's Form 4 filed with the SEC on February 19, 2002 falsely reported that options granted to Dryden had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

81.    Parkinson's Form 4 filed with the SEC on February 19, 2002 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

82.    S. Borick's Form 4 filed with the SEC on March 21, 2002 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 68 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 393   Filed 05/05/2008   Page 148 of 165
#:393

83.     Colburn's Form 4 filed with the SEC on March 21, 2002 falsely reported that options granted to Colburn had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

84.     Ferguson's Form 4 filed with the SEC on March 21, 2002 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

85.     Levine's Form 4 filed with the SEC on March 21, 2002 falsely reported that options granted to Levine had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

86.     O'Rourke's Form 4 filed with the SEC on March 21, 2002 falsely reported that options granted to O'Rourke had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

87.     Evans's Form 4 filed with the SEC on April 10, 2002 falsely reported that options granted to Evans had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

88.     Monteleone's Form 4 filed with the SEC on April 10, 2002 falsely reported that options granted to Monteleone had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

89.     Ornstein's Form 4 filed with the SEC on April 10, 2002 falsely reported that options granted to Ornstein had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

90.     Schmitz's Form 4 filed with the SEC on April 10, 2002 falsely reported that options granted to Schmitz had been granted on September 3, 1998;

91.     L. Borick's Form 4 filed with the SEC on June 13, 2002 falsely reported that options granted to L. Borick had been granted on September 20, 2001;

92.     Bouskill's Form 4 filed with the SEC on June 13, 2002 falsely reported that options granted to Bouskill had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

93.     S. Borick's Form 4 filed with the SEC on July 15, 2002 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

94.     Fanelli's Form 4 filed with the SEC on September 4, 2002 falsely reported that options granted to Fanelli had been granted on September 3, 1998, September 24, 1999, and September 20, 2000;

95.     Bouskill's Form 4 filed with the SEC on September 10, 2002 falsely reported that options granted to Bouskill had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

96.     Levine's Form 4 filed with the SEC on September 13, 2002 falsely reported that options granted to Levine had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

14

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

97.   Fanelli's Form 4 filed with the SEC on September 16, 2002 falsely reported that options granted to Fanelli had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

98.   L Borick's Form 4 filed with the SEC on December 24, 2002 falsely reported that options granted to L. Borick had been granted on September 20, 2001;

99.   S. Borick's Form 4 filed with the SEC on December 24, 2002 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

100.   Schmitz's Form 4 filed with the SEC on December 24, 2002 falsely reported that options granted to Schmitz had been granted on September 3, 1998;

101.   Ferguson's Form 4 filed with the SEC on January 13, 2003 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

102.   L. Borick's Form 4 filed with the SEC on March 10, 2003 falsely reported that options granted to L. Borick had been granted on September 20, 2001;

103.   Dryden's Form 4 filed with the SEC on March 18, 2003 falsely reported that options granted to Dryden had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

104.  Ferguson's Form 4 filed with the SEC on June 13, 2003 falsely reported that options granted to Ferguson had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

105.  Levine 's Form 4 filed with the SEC on June 24, 2003 falsely reported that options granted to Levine  had been granted on September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

106.  Ausman's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Ausman had been granted on September 3, 1998;

107.  Brown's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Brown had been granted on September 3, 1998;

108.  Colburn's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Colburn had been granted on September 3, 1998;

109.  Dryden's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Dryden had been granted on September 3, 1998;

110.  Escue's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Escue had been granted on September 3, 1998;

111.  Evans's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Evans had been granted on September 3, 1998;

112.  Ferguson's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Ferguson had been granted on September 3, 1998;

113.  Levine's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Levine had been granted on September 3, 1998;

16

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO    Document 105-2    Filed 05/06/08    Page 72 of 85    Page ID
Case 2:06-cv-07213-AHS-FMO    Document 103    Filed 05/05/2008    Page 152 of 165
#:403

114.   Monteleone's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Monteleone had been granted on September 3, 1998;

115.   Ornstein's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Ornstein had been granted on September 3, 1998;

116.   O'Rourke's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to O'Rourke had been granted on September 3, 1998;

117.   Parkinson's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Parkinson had been granted on September 3, 1998;

118.   Schmitz's Form 5 filed with the SEC on February 22, 1999 falsely reported that options granted to Schmitz had been granted on September 3, 1998;

119.   Ausman's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Ausman had been granted on September 3, 1998;

120.   Ausman's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Ausman had been granted on September 24, 1999;

121.   Brown's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Brown had been granted on February 1, 1995, September 3, 1998 and September 24, 1999;

122.   Colburn's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Colburn had been granted on February 1, 1995 and

123.   Dryden's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Dryden had been granted on April 14, 1997, September 3, 1998 and September 24, 1999;

17

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

124.  Escue's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Escue had been granted on September 3, 1998;

125.  Evans's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Evans had been granted on September 3, 1998 and September 24, 1999;

126.  Fanelli's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Fanelli had been granted on September 3, 1998 and September 24, 1999;

127.  Ferguson's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

128.  Kelley's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Kelley had been granted on February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

129.  Levine's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Levine had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

130.  Monteleone's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Monteleone had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

131.  Ornstein's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Ornstein had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO    Document 105-2    Filed 05/06/08    Page 74 of 85    Page ID
Case 2:06-cv-07213-AHS-FMO    Document 103    Filed 05/05/2003    Page 154 of 165
#:483

132.  O'Rourke's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to O'Rourke had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

133.  Parkinson's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998 and September 24, 1999;

134.  S. Borick's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to S. Borick had been granted on September 3, 1998 and September 24, 1999;

135.  Schmitz's Form 5 filed with the SEC on February 23, 2000 falsely reported that options granted to Schmitz had been granted on January 4, 1993, February, 1, 1995 and September 3, 1998;

136.  Ausman's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Ausman had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

137.  Bouskill's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Bouskill had been granted on April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

138.  Brown's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Brown had been granted on February 1, 1995, September 3, 1998, September 24, 1999 and September 20, 2000;

139.  Colburn's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Colburn had been granted on February 1, 1995, September 3, 1998 and September 24, 1999;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

140.  Dryden's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Dryden had been granted on April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

141.  Evans's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Evans had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

142.  Fanelli's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Fanelli had been granted on September 3, 1998;

143.  Ferguson's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

144.  Kelley's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Kelley had been granted on April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

145.  Levine's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Levine had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998 and September 24, 1999;

146.  Monteleone's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Monteleone had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

147.  Ornstein's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Ornstein had been granted on January 4, 1993,

20

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

148.  O'Rourke's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to O'Rourke had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999 and September 20, 2000;

149.  Parkinson's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998, September 24, 1999 and September 20, 2000;

150.  S. Borick's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999 and September 20, 2000;

151.  Schmitz's Form 5 filed with the SEC on March 20, 2001 falsely reported that options granted to Schmitz had been granted on January 4, 1993, February 1, 1995 and September 3, 1998;

152.  Ausman's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Ausman had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

153.  Bouskill's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Bouskill had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

154.  Brown's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Brown had been granted on February 1, 1995,

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 77 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 408   Filed 05/05/2008   Page 157 of 165
#:408

September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

155.  Colburn's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Colburn had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

156.  Dryden's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Dryden had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

157.  Evans's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Evans had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

158.  Fanelli's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Fanelli had been granted on September 3, 1998 and September 20, 2000;

159.  Ferguson's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

160.  Kelley's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Kelley had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 78 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 103   Filed 05/05/2008   Page 158 of 165
#:407

161.   L. Borick's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to L. Borick had been granted on September 20, 2001;

162.   Levine's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Levine had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

163.   Ornstein's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Ornstein had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

164.   O'Rourke's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to O'Rourke had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

165.   Parkinson's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

166.   S. Borick's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

167.   Schmitz's Form 5 filed with the SEC on February 4, 2002 falsely reported that options granted to Schmitz had been granted on January 4, 1993 and September 3, 1998;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 79 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 103   Filed 05/05/2008   Page 159 of 165
#:408

168.   S. Borick's Form 5 filed with the SEC on March 21, 2002 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999, September 20, 2000 and September 20, 2001;

169.   Ausman's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Ausman had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

170.   Bouskill's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Bouskill had been granted on September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

171.   Brown's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Brown had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

172.   Colburn's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Colburn had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

173.   Dryden's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Dryden had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

174.   Evans's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Evans had been granted on September 3, 1998,

24

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 80 of 85   Page ID
Case 2:06-cv-07213-AHS-FMO   Document 103   Filed 05/05/2008   Page 160 of 165
#:409

September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

175. Fanelli's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Fanelli had been granted on September 24, 1999, September 20, 2000 and October 9, 2002;

176. Ferguson's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Ferguson had been granted on January 4, 1993, February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

177. Kelley's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Kelley had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

178. Levine's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Levine had been granted on September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

179. Monteleone's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Monteleone had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

180. Ornstein's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Ornstein had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

181.  O'Rourke's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to O'Rourke had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

182.  Parkinson's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

183.  S. Borick's Form 5 filed with the SEC on October 22, 2002 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

184.  Bouskill's Form 5 filed with the SEC on October 30, 2002 falsely reported that options granted to Bouskill had been granted on September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

185.  Dryden's Form 5 filed with the SEC on October 30, 2002 falsely reported that options granted to Dryden had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

186.  Bouskill's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Bouskill had been granted on September 20, 2000, September 20, 2001 and October 9, 2002;

187.  Brown's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Brown had been granted on February 1, 1995,

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO    Document 105-2    Filed 05/06/08    Page 82 of 85    Page ID
Case 2:06-cv-07213-AHS-FMO    Document 103    Filed 05/05/08    Page 162 of 165
#:4103

September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

188.   Evans's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Evans had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

189.   Fanelli's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Fanelli had been granted on September 20, 2000 and October 9, 2002;

190.   Ferguson's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Ferguson had been granted on February 1, 1995, April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

191.   Kelley's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Kelley had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

192.   Levine's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Levine had been granted on September 20, 2000, September 20, 2001 and October 9, 2002;

193.   Monteleone's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Monteleone had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

194.   Ornstein's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Ornstein had been granted on September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

195.   O'Rourke's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to O'Rourke had been granted on April 14, 1997, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

196.   Parkinson's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to Parkinson had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

197.   S. Borick's Form 5 filed with the SEC on December 23, 2003 falsely reported that options granted to S. Borick had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002;

198.   Ausman's Form 5 filed with the SEC on December 24, 2003 falsely reported that options granted to Ausman had been granted on September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002; and

199.   Colburn's Form 5 filed with the SEC on December 29, 2003 falsely reported that options granted to Colburn had been granted on February 1, 1995, September 3, 1998, September 24, 1999, September 20, 2000, September 20, 2001 and October 9, 2002.

Exhibit "A" to Plaintiffs' Verified Second Amended
Consolidated Shareholder Derivative Complaint

Case 2:06-cv-07213-AHS-FMO   Document 105-2   Filed 05/06/08   Page 84 of 85   Page ID
#:413
Case 2:06-cv-07213-AHS-FMO   Document 103   Filed 05/  /2008   Page 164 of 165

## SUPERIOR INDUSTRIES, INC. SECOND AMENDED CONSOLIDATED VERIFICATION

I, Gary B. Eldred, hereby verify that I am familiar with the allegations in the

Second Amended Consolidated Complaint, and that I have authorized the filing of the Second

Amended Consolidated Complaint, and that the foregoing is true and correct to the best of my

knowledge, information and belief.

DATE: _4- 30~08_____          _____
                                  GARY B. ELDRED

## VERIFICATION

I, Tom Beatty, hereby verify that I have authorized the filing of the attached Second

Amended Consolidated Shareholder Derivative Complaint, and that the facts therein are true and

correct to the best of my knowledge, information and belief.  I declare under penalty of perjury

that the foregoing is true and correct.

DATE April 30, 2008

TOM BEATTY